SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State v. Lixandra Hernandez and Jose G. Sanchez (A-39-14) (075444)**

**Argued January 5, 2016 -- Decided June 28, 2016**

**ALBIN, J., writing for a unanimous Court.**

In this appeal, the Court considers whether criminal defendants have a right to discovery of the files in unrelated cases involving the same cooperating witness.

The State alleges that on three occasions in 2011, defendants sold more than five ounces of cocaine to a witness cooperating with law enforcement officials. Defendants were arrested a year after the last alleged transaction. In the interim, the cooperating witness (the Witness) assisted the State in a number of other drug investigations and prosecutions. The State provided discovery to defense counsel that included the name of the Witness, his criminal history, his cooperation and plea agreements with the State, and copies of audiotapes that allegedly contained the recordings of defendants' transactions with the Witness. In exchange for his cooperation and guilty plea to racketeering, the State promised the Witness dismissal of the remaining gang-related criminal charges and a favorable sentence recommendation. The agreement also provides for sentence reductions for each successful prosecution of three targeted individuals on charges of leader of a narcotic trafficking network and each successful prosecution of two targeted individuals for distribution of PCP. The cooperation agreement will be void if the Witness knowingly provides false information, intentionally overstates or understates the involvement of other individuals in the targeted investigations, or should he be knowingly untruthful, false, incomplete or misleading in relation to those investigations.

Defendants made discovery demands for information relating to the Witness's cooperation with the State in other investigations and prosecutions. The State responded that the defense had not shown that the information was relevant. The trial court ordered the State to produce all of the documents in the unrelated investigations for an in camera review. During the hearing, defendants narrowed their discovery demand to: (1) statements of the cooperating witness and investigative reports in each matter identified by the State in which the witness provided information; (2) suStatmmaries of any interviews of the cooperating witness in any matter; (3) tape recordings and CDs of the cooperating witness; and (4) a privilege log of the internal memoranda and e-mails in this case and the three other Division of Criminal Justice investigations. The State objected, but complied with the court's order. The court concluded that the information produced was not relevant or admissible in defendants' case, but was discoverable because it might lead to relevant or admissible evidence. The State expressed its concern that the Witness could face retaliation if his identity were to be revealed to the targets of the unrelated investigations and invoked the informant's privilege to attempt to shield his name from disclosure. The court did not find the informant's privilege applicable and ruled that the documents in unrelated cases in which the Witness cooperated, would have to be tendered to the defense, unless the documents pertained to a pending investigation that had yet to result in an arrest or charge. The court ordered redactions of names and locations from disclosed documents and entered a protective order stating that the defense attorneys could not discuss the documents with anyone other than their clients. The State moved for leave to appeal and for a stay of the trial court's discovery order.

In an unpublished opinion, the appellate panel affirmed the trial court's discovery order and rejected the State's claim that the Witness was entitled to the protection of the informant's privilege or that potential harm might come to the Witness by the disclosures. The Court granted the State's motions for leave to appeal and for a stay pending appeal. 220 N.J. 564 (2015).

**HELD**: Although the discovery rule generally requires that the State provide all evidence relevant to the defense of criminal charges, it does not open the door to foraging through files of other cases in search of relevant evidence. The discovery ordered by the trial court and Appellate Division exceeds the limits of Rule 3:13-3(b) and is not supported by this Court's jurisprudence.

1. An accused has a right to broad discovery after the return of an indictment in a criminal case. Rule 3:13-3(b) states that discovery shall include exculpatory information and relevant material. Discovery in a criminal case is appropriate if it will lead to relevant information. Evidence is relevant if it has a tendency in reason to prove or disprove any fact of consequence to the determination of the action. The State's discovery obligation also extends to providing material evidence affecting the credibility of a State's witness whose testimony may be determinative of guilt or innocence. Thus, the State must disclose any promise of favorable treatment or leniency offered to a

witness, including any plea or cooperation agreement setting forth the benefits to the witness. While discovery in criminal cases is broad, it is not unlimited. Nevertheless, trial courts are empowered to order discovery beyond that mandated by our court rules when doing so will further the truth-seeking function or ensure the fairness of a trial. However expansive the discovery rule and this Court's jurisprudence may be, they do not sanction rummaging through irrelevant evidence. (pp. 14-17)

2. Here, the State's case is based on a cooperating witness who has given assistance to law enforcement in a number of criminal investigations. In discovery, the State has given the defense the Witness's name, his statements to law enforcement authorities, his criminal history, his plea and cooperation agreements, audio recordings of the alleged drug transactions, the report of the forensic analysis of the cocaine allegedly sold by defendants, and investigative reports concerning the alleged offenses committed by defendants. In other words, the Attorney General has opened its investigative file in this case. The question, therefore, is whether defendants are entitled to open-file discovery of unrelated cases because the present case and the unrelated cases share a common thread -- the same cooperating witness. (pp. 18-19)

3. Defendants have a right to expose the bias of the Witness for the purpose of undermining his credibility before the jury. Defendants can cross-examine the Witness on his expectation of favorable treatment for his cooperation and argue that he has sold his services and testimony to the State. The State has also opened the door to a line of questioning by giving itself wide discretion to void the cooperation agreement if the Witness should knowingly provide false information, answer any questions falsely, or intentionally overstate or understate the involvement of other individuals in the targeted investigations. Thus, defendant is entitled to information concerning any violation of the cooperation agreements, including disclosure of material false statements made by the witness and known to the State. Importantly, at oral argument before this Court, the State conceded that its discovery obligations required the disclosure of such material false statements. Defendants, however, do not want to rely on the State to turn over exculpatory information. They insist that they have the right under the discovery rules to sift through the files in the unrelated investigations in search of false and contradictory statements. At this stage, however, defendants have not articulated how the disclosure of documents in the unrelated investigations will lead to relevant or admissible evidence. (pp. 19-21)

4. Defendants claim that they are entitled to false and inconsistent statements made by the Witness in the unrelated investigations. Such statements would not be admissible under N.J.R.E. 608 because evidence of specific instances of conduct -- other than a prior conviction -- to prove the character trait of untruthfulness is prohibited. This rule was designed to prevent unfair foraging into the witness's past and to prevent wide-ranging collateral attacks on the general credibility of a witness that would cause confusion of the true issues in the case. Defendants also claim that documents in the unrelated investigations may be necessary to refresh the Witness's recollection under N.J.R.E. 612, but such a vague discovery request is not tied to a specified demand for information that meets the threshold of relevance. Defendants further claim that discovery is necessary to uncover false criminal accusations against others that would be admissible under N.J.R.E. 608. However, defendants have not made any showing that the Witness has made false criminal accusations against others. An open-ended search of unrelated investigative files in the hope that something may turn up that has impeachment value is not sanctioned by the discovery rule or this Court's jurisprudence. (pp. 21-22)

5. The informant's privilege permits a witness to refuse to disclose the identity of a confidential informant unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues. The State has legitimate concerns for the safety of witnesses. The disclosure of the Witness's identity in this case is necessary because he will testify against defendants. The potential threat to his life, however, would increase exponentially if his identity were revealed to the targets in the unrelated drug investigations. At least at this stage, the disclosure of the Witness's identity in the unrelated investigations is not necessary for defendants to receive a fair trial. If defendants cannot signify with some specificity the relevance of the requested documents -- as opposed to speculative relevance -- the balancing of probative value against the dangers of disclosure weighs in favor of not removing the Witness's cover, at least until defendants can make some concrete showing of need. (pp. 23-24)

The judgment of the Appellate Division is **REVERSED.** The discovery order is **VACATED** and the matter is **REMANDED** to the trial court for further proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN'S opinion. JUSTICE FERNANDEZ-VINA did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

LIXANDRA HERNANDEZ and JOSE
G. SANCHEZ,

    Defendants-Respondents.


         Argued January 5, 2016 – Decided June 28, 2016

         On appeal from the Superior Court, Appellate
         Division.

         Carol M. Henderson, Assistant Attorney
         General, argued the cause for appellant
         (John J. Hoffman, Acting Attorney General of
         New Jersey, attorney).

         Michael P. Koribanics and Charles J. Alvarez
         argued the cause for respondents (Koribanics
         & Koribanics, attorneys for Lixandra
         Hernandez and Peter R. Willis, attorney for
         Jose G. Sanchez).

         Lawrence S. Lustberg argued the cause for
         amicus curiae Association of Criminal
         Defense Lawyers of New Jersey (Gibbons,
         attorneys; Mr. Lustberg, Jillian T. Stein,
         and Laurie A. Kelly, on the brief).


    JUSTICE ALBIN delivered the opinion of the Court.

    New Jersey provides a broad range of discovery to an

accused in a criminal case under Rule 3:13-3.  This open-file

approach is intended to ensure fair and just trials.  Here, the

issue is not whether defendants have a right to discovery of the prosecutor's file in their case, but whether they have a right to discovery of the files in unrelated cases involving the same cooperating witness.

The cooperating witness (the Witness) in defendants' drug case assisted the State in a number of drug investigations and prosecutions.  In discovery, defendants were given the agreements between the State and the Witness in this case and in unrelated cases, and the State has represented that it will provide the defense with any known material false statements made by the Witness in those cases.  Defendants nevertheless insist that they are entitled to every statement made by the Witness in each case in which he has cooperated with the State, whether those statements are contained in a transcribed interview, recorded drug transaction, investigative report, or memorandum between members of the prosecutorial team.

The trial court determined that such information, regardless of its lack of relevance, is discoverable under our court rules.  The Appellate Division affirmed.

We hold that the discovery ordered by the trial court and Appellate Division exceeds the limits of Rule 3:13-3(b) and is not supported by our jurisprudence.  Although our discovery rule generally requires that the State provide all evidence relevant to the defense of criminal charges, it does not open the door to

2

foraging through files of other cases in search of relevant evidence. The only information discoverable in the unrelated cases that is relevant to the defense at this point are the cooperation agreements between the State and the Witness and any violations of the agreements, such as material false statements made by the Witness and known to the State. The discovery order here requires disclosure of information not mandated by our discovery rule -- information that has no ostensible relevance to the case to be tried.

Accordingly, we reverse the judgment of the Appellate Division and remand for proceedings consistent with this opinion.

I.

The Charges

Defendants Lixandra Hernandez and Jose G. Sanchez are charged in a State Grand Jury indictment with second-degree conspiracy to distribute more than five ounces of cocaine, N.J.S.A. 2C:5-2; first-degree distribution of more than five ounces of cocaine, N.J.S.A. 2C:35-5(a)(1), (b)(1), (c), and N.J.S.A. 2C:2-6; second-degree distribution of cocaine within 500 feet of a public park, N.J.S.A. 2C:35-7.1 and N.J.S.A. 2C:2-6; and third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1) and N.J.S.A. 2C:2-6.

The State alleges that on November 28, December 1, and December 14, 2011, defendants sold, in all, more than five ounces of cocaine to the Witness cooperating with law enforcement officials. The three controlled buys were audio-recorded.

Defendants were not arrested until a year after the last alleged drug transaction. In the interim, the Witness cooperated with the State in a number of other investigations.

The State provided discovery to defense counsel that included the name of the Witness, his criminal history, his cooperation agreements and plea agreement with the State, and copies of audiotapes that allegedly contained the recordings of defendants' transactions with the Witness. The discovery revealed that the Witness had cooperated with the State in criminal investigations of a violent street gang. In exchange for his cooperation and guilty plea to racketeering, the State promised the Witness dismissal of the remaining gang-related criminal charges and a favorable sentence recommendation.

### The Cooperation Agreement

The State and the Witness entered into two cooperation agreements, but only the superseding agreement is germane to this case. The superseding cooperation agreement sets forth the criminal charges filed against the Witness, including (1) first-degree racketeering; (2) second-degree conspiracy to commit

4

robbery, burglary, and possession of a firearm with the purpose to use it unlawfully against another; (3) third-degree receiving stolen property; and (4) two second-degree and three third-degree weapons offenses.  On the charge of racketeering alone, the Witness faced an extended term sentence of life imprisonment and exposure to mandatory consecutive sentences on other offenses, as well as application of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

The superseding cooperation agreement enumerates a number of incentives for the Witness's assistance.  The State has promised the Witness that if his cooperation is of "productive and of substantial value to the State . . . , the State will recommend a sentence of 14 years in State Prison subject to [NERA]" on the racketeering charge to which he pled guilty.[1]  The cooperation agreement also provides for further sentence reductions of eighteen months for each "successful prosecution" of three targeted individuals on charges of first-degree leader of a narcotic trafficking network, reductions of six months for each "successful prosecution" of two targeted individuals for first-degree distribution of PCP, and further sentence

---

[1] The Witness's plea agreement with the State indicates that, in exchange for his plea of guilty to racketeering and conspiracy to commit robbery and burglary, the remaining charges will be dismissed.  The cooperation agreement does not refer to a sentence recommendation on the conspiracy charge.

5

reductions for convictions of lesser offenses. The State has further promised to amend the agreement to give the Witness credit for cooperation leading to the indictment of persons involved in other criminal schemes.

The State makes clear that the cooperation agreement will be void if the Witness should "knowingly provide false information, answer any questions falsely . . . or intentionally overstate or understate the involvement of other individuals" in the targeted investigations, or should he "in any manner be knowingly untruthful, false, incomplete or misleading in relation" to those investigations.

<u>Discovery Issue</u>

Defendants made broad discovery demands for information relating to the Witness's cooperation with the State in other investigations and prosecutions. In a letter dated February 3, 2014, the defense requested:

> 1. All internal memorandum, emails, and interviews of [the Witness] by any member of law enforcement regarding all matters referred to in the cooperation agreements dated October 26, 2011 and January 25, 2012.
>
> 2. Notes and documentations of all contacts between and amongst [the Witness] and any member of law enforcement for the state of New Jersey.
>
> 3. Any and all communications [including emails] from the attorney for [the Witness] to any member of law enforcement and/or the

6

Attorney General's office regarding his cooperation and/or plea agreement.

4. Any and all statements [including emails] made in proffers or disclosures made by [the Witness] in furtherance of his cooperation agreement.

5. Copies of any [and] all documents, including discovery in prior cases that were reviewed in connection with granting [the Witness] a cooperation agreement.

The State responded that the defense had not made a showing that the information requested was relevant. At a February 7, 2014 discovery conference, the trial court ordered the State to produce all of the documents in the unrelated investigations for an in camera review and to prepare a privilege log. The State indicated that the pretrial discovery in the unrelated cases in which the Witness had cooperated filled nine banker's boxes. During the hearing, defendants narrowed their discovery demand to:

1. Statements of the cooperating witness and investigative reports in the four matters identified by the State in which the witness provided information.

2. Summaries of any interviews of the cooperating witness in any matter.

3. Tape recordings and CDs of the cooperating witness.

4. A privilege log of the internal memoranda and e-mails in this case and the three other Division of Criminal Justice investigations.

7

Although the State continued to object to the defense's discovery demands, the State complied with the court's order and provided for in camera review a number of documents, including investigative reports and intercepted telephone calls in unrelated matters in which the Witness had cooperated. After completing the in camera document review, the court concluded that the information produced was not relevant or admissible in defendants' case, but was discoverable, apparently based on the court's belief -- though not stated explicitly -- that the information might lead to relevant or admissible evidence. The State vigorously expressed its concern that the Witness could face retaliation or even death if his identity were to be revealed to the targets of the unrelated investigations. The State invoked the informant's privilege, N.J.R.E. 516, in an attempt to shield his name from disclosure. The court did not find the informant's privilege applicable.

Ultimately, the court ruled that, notwithstanding their lack of relevance in the present matter, documents in unrelated cases in which the Witness cooperated would have to be tendered to the defense, unless the documents pertained to a pending investigation that had yet to result in an arrest or charge. However, in those cases in which the Witness cooperated and either no charges were filed or charges are pending against the targets of the investigation, or the targets entered guilty

8

pleas, the court ordered disclosure of documents to the defense. Those documents to be disclosed include investigative reports, the Witness's statements and summaries of those statements, recordings of conversations between the Witness and investigative targets, and -- subject to the work-product privilege -- internal law enforcement emails mentioning the Witness and emails between the Witness's attorney and law enforcement officials.[2]  In light of the potential threat to the Witness from those disclosures, the court ordered redactions of names and locations from disclosed documents.[3]  The court also entered a protective order stating that the defense attorneys could not discuss the documents "with anybody other than [their] clients."

A panel of the Appellate Division granted the State's motions for leave to appeal and for a stay of the discovery order.

---

[2] The court indicated that relief would be granted to the State if the electronic email search became unduly burdensome.

[3] The signed discovery order entered by the trial court provides that "subject to the appropriate redactions and the entry of a Protective Order as set forth on the record February 10, 2014[,]" "[t]he State must release documents and other materials in its possession related to [the Witness]," but not "documents or materials related . . . to ongoing investigations."  The February 10 record of the discovery proceeding is not a model of clarity.  A written discovery order that is detailed and specific will assist not only the parties in understanding their respective obligations, but also appellate review.

In an unpublished opinion, the appellate panel affirmed the trial court's discovery order.  In doing so, the panel noted that broad discovery is permitted under Rule 3:13-3 and that substantial deference must be paid to the trial court's evidentiary rulings.  It observed that the discovery request was narrowed to "e-mails, the three other [Division of Criminal Justice] investigations, and statements and summaries involving [the Witness]," and "a privilege log detailing internal memoranda."  The panel concluded that the "discovery is rationally related to defendants' right to confront a key state witness as to potential bias, prejudice or motive and is relevant for that purpose."  It rejected the State's claim that the Witness was entitled to the protection of the informant's privilege, N.J.R.E. 516, or that potential harm might come to the Witness by the disclosures, reasoning that the Witness's "identifying information has already been provided in this case as well as in other criminal prosecutions."  Last, the panel indicated that the "discovery order was tailored to [the Witness's] involvement in other investigations referenced in the cooperation agreements" and that the "court stated if the electronic search produced thousands of documents the request would be narrowed."

We granted the State's motions for leave to appeal and for a stay pending appeal. State v. Hernandez, 220 N.J. 564 (2015). The Association of Criminal Defense Lawyers of New Jersey (ACDL) was granted leave to participate as amicus curiae before the Appellate Division, and therefore was permitted, "without seeking further leave," to appear before this Court. See R. 1:13-9(d).

### III.
#### A.

The State argues that its use of a cooperating witness in this case is not a legitimate basis for ordering discovery of documents in unrelated investigations involving the Witness when the documents bear no relevance to the present case. The State maintains that the trial court's order is "an unprecedented expansion of the discovery rules," allows the defense to go on a "fishing expedition," and places on the Attorney General's Office the burdensome task of creating a privilege log of every email communication or memorandum mentioning the cooperating witness. According to the State, the trial court's acknowledgment that the documents in the unrelated investigations are not relevant or admissible in this case is proof that the documents are not subject to discovery. The State contends that it has satisfied its discovery obligations by providing the defense with all statements made by the Witness

11

in this case, the Witness's criminal record, and cooperation agreements between the State and the Witness involving all investigations.  Those disclosures, the State asserts, allow defendants to explore the Witness's favorable treatment and to expose potential bias.

The State also submits that the cooperating witness's name was not disclosed in unrelated investigations because some of those investigations did not result in the filing of charges, and, in others, because the cases were resolved without trials. The State claims that disclosure of the Witness's identity in those unrelated cases unnecessarily subjects him to retaliation and potential harm.

### B.

Defendants urge this Court to affirm the trial court's discovery order, emphasizing that the issue at this point is not the admissibility of the documents in the unrelated investigations.  Defendants submit that the discovery order was "specifically tailored to identify material related to any benefits to be received by the cooperating witness."  According to defendants, "each successive investigation mentioned in the cooperation agreement has a direct impact and influence on the value of any benefit [the Witness] will receive."  Defendants also argue that the cooperation agreements give rise to the need for the documents so that the defense can explore any benefits

12

given to the Witness, N.J.R.E. 607, expose any inconsistent statements, N.J.R.E. 613, refresh the Witness's recollection with a writing, N.J.R.E. 612, and probe the Witness's character for truthfulness and for any false accusation he may have made, N.J.R.E. 608. Finally, defendants contend that the State bears the burden of producing discovery in its possession, however onerous that may be, and that the documents ordered to be disclosed "are already available, and in some cases already organized."

## C.

Amicus curiae ACDL argues that upholding the discovery order in this case is particularly important because of empirical evidence and an "emerging consensus that the testimony of [cooperating witnesses], upon which so many convictions are based, is often unreliable, particularly in light of the promises of lenient treatment or compensation that these witnesses receive." It submits that the discovery order "was carefully tailored to provide important impeachment material but not to tread on ongoing State investigations." The ACDL posits that "the statements of a [cooperating witness] in other similar investigations . . . are . . . very likely to reveal exculpatory or impeachment evidence that will be crucial to the effective cross-examination of that witness." Additionally, the ACDL maintains that the court's ordering of the redaction of names

13

and locations from documents in unrelated investigations in which the cooperating witness's identity has not been revealed, and the entry of a protective order, address and mitigate any potential for reprisal against the Witness.

IV.

A.

We accord substantial deference to a trial court's issuance of a discovery order and will not interfere with such an order absent an abuse of discretion.  State ex rel. A.B., 219 N.J. 542, 554 (2014).  We need not defer, however, to a discovery order that is well "wide of the mark," ibid., or "based on a mistaken understanding of the applicable law," Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (quoting Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div.), certif. denied, 185 N.J. 296 (2005)).  Additionally, our review of the meaning or scope of a court rule is de novo, and therefore we owe no deference to the interpretative statements of the trial court and Appellate Division, unless they are persuasive in their reasoning.  See A.B., supra, 219 N.J. at 554-55.

B.

In New Jersey, an accused has a right to broad discovery after the return of an indictment in a criminal case.  State v. Scoles, 214 N.J. 236, 252 (2013).  This state's "open-file

14

approach to pretrial discovery in criminal matters" is intended "[t]o advance the goal of providing fair and just criminal trials." Ibid. The metes and bounds of the State's discovery obligation to the defense is found in Rule 3:13-3(b), which states that "[d]iscovery shall include exculpatory information or material" and "relevant material," including all items set forth in ten separate categories.

No one questions that discovery in a criminal case "is appropriate if it will lead to relevant" information. State v. Ballard, 331 N.J. Super. 529, 538 (App. Div. 2000) (emphasis added). But cf. R. 4:10-2(a) (stating that discovery in civil cases extends to information that "appears reasonably calculated to lead to the discovery of admissible evidence" (emphasis added)). "Relevancy is the hallmark of admissibility of evidence." State v. Darby, 174 N.J. 509, 519 (2002). Evidence is relevant if it "ha[s] a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401.

Four categories of Rule 3:13-3(b), requiring the disclosure of relevant material to the defense, are directly germane to this case:

> (E) books, papers, documents, or copies
> thereof, or tangible objects, buildings or
> places which are within the possession,
> custody or control of the prosecutor,
> including, but not limited to, writings,

drawings, graphs, charts, photographs, video
and sound recordings, images, electronically
stored information, and any other data or data
compilations stored in any medium from which
information can be obtained and translated, if
necessary, into reasonably usable form;

(F) names, addresses, and birthdates of any
persons whom the prosecutor knows to have
relevant evidence or information including a
designation by the prosecutor as to which of
those persons may be called as witnesses;

(G) record of statements, signed or unsigned,
by such persons or by co-defendants which are
within the possession, custody or control of
the prosecutor and any relevant record of
prior conviction of such persons. . . . ;

(H) police reports that are within the
possession, custody, or control of the
prosecutor[.]

[R. 3:13-3(b)(1)(E)-(H).]

The State's discovery obligation also extends to providing

"material evidence affecting [the] credibility" of a State's

witness whose testimony may be determinative of guilt or

innocence.  State v. Carter, 69 N.J. 420, 433 (1976) (citing

Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed.

2d 104 (1972)).  Thus, the State must disclose any promise of

favorable treatment or leniency offered to a witness, including

any plea or cooperation agreement setting forth the benefits to

the witness.  See State v. Long, 119 N.J. 439, 489 (1990);

Carter, supra, 69 N.J. at 429-30, 434.

16

While discovery in criminal cases is broad, it is not unlimited.  State v. D.R.H., 127 N.J. 249, 256 (1992).  "For example, defendants cannot transform the discovery process into an unfocused, haphazard search for evidence."  Ibid.; see also State v. R.W., 104 N.J. 14, 28 (1986) ("[A]llowing a defendant to forage for evidence without a reasonable basis is not an ingredient of either due process or fundamental fairness in the administration of the criminal laws.").  Nevertheless, "our trial courts are empowered to order discovery beyond that mandated by our court rules when doing so will further the truth-seeking function or ensure the fairness of a trial."  A.B., supra, 219 N.J. at 560.  In A.B., we upheld an order allowing the defense to inspect the alleged victim's home, where an alleged sexual offense had occurred, even though the premises did "not fall within the general scope of the automatic discovery rule because her home [was] not 'within the possession, custody or control of the prosecutor.'"  Id. at 556 (quoting R. 3:13-3(b)(1)(E)).  We did so, notwithstanding the intrusion into the alleged victim's privacy rights, because the inspection would lead to relevant evidence -- an understanding of the layout of the crime scene -- and was necessary to protect the juvenile's right to a fair trial.  Id. at 556-62.  However expansive our discovery rule and jurisprudence may be, they do not sanction rummaging through irrelevant evidence.

17

V.

A.

We begin our analysis by indicating what is not at issue. The State has provided discovery directly related to the charges against defendants. The State's case is based on a cooperating witness who has given assistance to law enforcement in a number of criminal investigations. In this matter, the Witness acted in the role of a drug buyer, making three alleged drug purchases from defendants that resulted in the charges enumerated in the indictment. The Witness recorded each transaction. At the time that the Witness played the role of drug buyer here, he had entered into a cooperation agreement with the State seeking favorable treatment for an array of offenses that he faced, including first-degree racketeering. The Witness's cooperation agreement details the charge and sentence reductions he will receive for his assistance to law enforcement in this case and in a number of other criminal investigations. In at least some -- if not all -- of those other investigations, his identity still has not been disclosed to ensure his safety.[4]

In discovery, the State has given the defense the Witness's name, his statements to law enforcement authorities, his criminal history, his plea and cooperation agreements, audio

---

[4] The lack of specificity in the record prompts our caution in not making an unqualified assertion.

18

recordings of the alleged drug transactions, the report of the forensic analysis of the cocaine allegedly sold by defendants, and investigative reports concerning the alleged offenses committed by defendants.  See R. 3:13-3(b).  In other words, the Attorney General has opened its investigative file in this case. The question, therefore, is whether defendants are entitled to open-file discovery of unrelated cases because the present case and the unrelated cases share a common thread -- the same cooperating witness.

B.

Defendants have a right to expose the bias of the Witness -- the favorable treatment promised to him for his cooperation in this case and other investigations -- for the purpose of undermining his credibility before the jury.  Defendants were provided in discovery the plea and cooperation agreements, which detail the charge- and sentence-reduction incentives offered to the Witness if the State credits his cooperation in this case as of "productive and of substantial value" and if his cooperation leads to the "successful prosecution" of targeted individuals in other cases.  Defendants can cross-examine the Witness on his expectation of favorable treatment for his cooperation and argue that he has sold his services and testimony to the State.

The State also has opened the door to a line of questioning by giving itself wide discretion to void the cooperation

19

agreement if the Witness should "knowingly provide false information, answer any questions falsely . . . or intentionally overstate or understate the involvement of other individuals" in the targeted investigations. The State has the proverbial sword of Damocles hanging over the Witness's head if he is untruthful. Clearly, if the Witness knowingly provided false or misleading information to the State in the other investigations and the State declined to void the agreement, the State's failure to do so would be another benefit conferred on the Witness that must be disclosed in discovery. In such a circumstance, defendants could argue that even when the Witness lies, he has a reasonable expectation that he will receive favorable treatment. Defendants have "a right to explore evidence tending to show that the State may have a 'hold' of some kind over a witness, the mere existence of which might prompt the individual to color his testimony in favor of the prosecution." State v. Bass, 224 N.J. 285, 302 (2016) (quoting State v. Parsons, 341 N.J. Super. 448, 458 (App. Div. 2001)). Thus, defendant is entitled to information concerning any violation of the cooperation agreements, including disclosure of material false statements made by the witness and known to the State. Importantly, at oral argument before this Court, the State conceded that its discovery obligations required the disclosure of such material false statements.

Defendants, however, do not want to rely on the kindness of the State to turn over exculpatory information. They insist that they have the right under our discovery rules and Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), to sift through the files in the unrelated investigations -- through the Witness's statements, investigative reports and emails mentioning the Witness, and recorded conversations between the Witness and investigative targets in search of false and contradictory statements.[5] Defendants want to undertake a speculative venture, hoping to snare some morsel of information that may be helpful to the defense. At this stage, however, defendants have not articulated how the disclosure of documents in the unrelated investigations will lead to relevant or admissible evidence. See Ballard, supra, 331 N.J. Super. at 538.

Putting aside the issue of bias previously discussed, defendants claim that they are entitled to false and inconsistent statements made by the Witness in the unrelated

---

[5] In Brady, supra, the United States Supreme Court held that due process forbids the government from withholding material evidence favorable to an accused that has been requested by the defense. 373 U.S. at 87, 83 S. Ct. at 1196-97, 10 L. Ed. 2d at 218. The disclosures required by Rule 3:13-3(b)(1), which include the release of exculpatory information or material and all other information relevant to a legitimate defense, are more expansive than the due process disclosures mandated by Brady and its progeny.

investigations. But such statements would not be admissible under N.J.R.E. 608 because "evidence of specific instances of conduct -- other than a prior conviction -- to prove the character trait of untruthfulness is prohibited." State v. Guenther, 181 N.J. 129, 140 (2004). This rule "was designed to prevent unfair foraging into the witness's past" and to prevent "wide-ranging collateral attacks on the general credibility of a witness [that] would cause confusion of the true issues in the case." Id. at 141-42.

Defendants also claim that documents in the unrelated investigations may be necessary to refresh the Witness's recollection, N.J.R.E. 612, but such a vague discovery request is not tied to a specified demand for information that meets the threshold of relevance. Defendants further claim that discovery is necessary to uncover false criminal accusations against others that would be admissible under N.J.R.E. 608. In Guenther, supra, we held that "in limited circumstances and under very strict controls a defendant has the right to show that a victim-witness has made a prior false criminal accusation for the purpose of challenging that witness's credibility." 181 N.J. at 154-58. But defendants have not made any showing that the Witness has made false criminal accusations against others that would entitle them to scour through nine banker's boxes of unrelated investigations in which the Witness has cooperated.

22

An open-ended search of unrelated investigative files in the hope that something may turn up that has impeachment value is not sanctioned by our discovery rule or jurisprudence.

C.

The informant's privilege, N.J.R.E. 516, permits a witness to refuse to disclose the identity of a confidential informant "unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues." The State has legitimate concerns for the safety of witnesses who are considered "snitches" or "rats." The disclosure of the Witness's identity in this case is necessary because he will testify against defendants. The potential threat to his life, however, would increase exponentially if his identity were revealed to the targets in the unrelated drug investigations. At least at this stage, we cannot find that the disclosure of the Witness's identity in the unrelated investigations is necessary for defendants to receive a fair trial in this case. See State v. Milligan, 71 N.J. 373, 384 (1976) (noting that disclosure depends on balancing of factors, "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors" (quoting Roviaro v.

23

United States, 353 U.S. 53, 62, 77 S. Ct. 623, 628, 1 L. Ed. 2d 639, 646 (1957))).

We recognize that the trial court ordered the redaction of names and locations from documents in the unrelated investigations. Of course, such redactions devalue the utility of the materials requested by defendants. For example, establishing a potential false accusation would be exceedingly difficult if the attorney does not know the name of the target. Nevertheless, despite the redactions and the protective order, the potential that the Witness's identity will be disclosed in unrelated investigations is still a risk. If defendants cannot signify with some specificity the relevance of the requested documents -- as opposed to speculative relevance -- the balancing of probative value against the dangers of disclosure weighs in favor of not removing the Witness's cover, at least until defendants can make some concrete showing of need.

We fully understand that the reliability of State informants and cooperating witnesses must be subject to special scrutiny because the charge-reduction and sentence-reduction incentives given to such witnesses have the capacity to induce false testimony. That is why the State is required to make complete disclosure of the cooperation and plea agreements. Through defendants' cross-examination and summation, the jury will know that the Witness has a powerful reason to curry favor

24

with the State.  In addition, the State is required as part of its discovery obligation to disclose known material false statements made by the Witness in the unrelated investigations because such disclosures bear on whether the State is enforcing or altering its cooperation agreement.  We have no reason to believe that the State will not fulfill its professional responsibilities in making any required disclosures.

It bears repeating that the trial court's in camera review of the documents in the unrelated investigations led the court to conclude that they did not have relevance to the present case.  Relevance is the touchstone of discovery.  Defendants' discovery request does not fall within the ambit of Rule 3:13-3(b) and is not supported by our jurisprudence.

## VI.

For the reasons expressed, we reverse the judgment of the Appellate Division, vacate the discovery order, and remand to the trial court for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN'S opinion.  JUSTICE FERNANDEZ-VINA did not participate.

25