**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3308-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DANNY C. WILLIAMS, a/k/a
DANIEL BURNAN, DANIEL
C. BURNAM, DANIEL CLYDE
BURNAM, DANNY CLYDE
BURNAM, WILLIAM BURNAM,
MANUEL WILLIAMS JUAN,
DANNY CLYDE MANLO,
KURT CHARLES MEYERS,
JOHN ALBERT WELLS,
DANIEL WILLIAMS,
DANIEL C. WILLIAMS,
DANIELC WILLIAMS,
DANNY CKYDE WILLIAMS,
DENNY CLYDE WILLIAMS,
DDANNY CLYDE WILLIAMS,

    Defendant-Appellant.

_____

Submitted March 18, 2024 – Decided February 28, 2025

Before Judges DeAlmeida and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 17-05-0322.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Leslie-Ann M. Justus, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Defendant Danny C. Williams appeals from the June 16, 2022 judgment of conviction entered by the Law Division after he pled guilty to second-degree vehicular homicide for killing a passenger in another vehicle while eluding police and driving drunk. Defendant reserved the right to appeal three trial court decisions made before his plea: (1) a December 21, 2020 denial of his motion to suppress a warrant for a blood draw from him on the day of the offense; (2) a January 25, 2021 denial of his motion to dismiss the indictment; and (3) a March 18, 2022 denial of his motion to compel discovery from the State. We affirm.

I.

On July 8, 2016, defendant, a commercial truck driver, went to an Elizabeth restaurant where he spent more than four hours drinking alcohol. During that time, he ingested three large "Ruby Relaxers," which consist of

vodka, rum, and peach schnapps, five shots of tequila, and three twenty-ounce draft beers.

He left the restaurant at around 10:30 p.m. and, while highly intoxicated, drove the front end of his 23,000-pound Freightliner tractor-trailer through the streets of Elizabeth, committing multiple traffic offenses including, but not limited to, crashing into vehicles, leaving the scene of those accidents, and driving the wrong way on a one-way street.

Defendant first sideswiped a car driven by Father John Michalczak on East Jersey Street. Defendant did not stop after the crash. Michalczak followed defendant to a dead-end on Front Street. Defendant exited his truck and walked around Michalczak's damaged car. Michalczak observed defendant wobbling and displaying other signs of intoxication. Defendant reentered his truck, executed a K-turn out of the dead-end, and drove off. Michalczak called police and continued to follow defendant.

At approximately 11:15 p.m., defendant encountered off-duty Union County Police Officer Homero Almanzar, who was in his personal vehicle with his spouse. Almanzar was traveling the correct direction on First Avenue, a one-way street. Defendant was driving his truck the wrong direction on First Avenue, heading toward Almanzar's car. Almanzar maneuvered his vehicle off

3

the street to avoid a head-on collision with defendant's truck.  Almanzar made a U-turn and followed defendant's truck onto Elizabeth Avenue, catching up to him at the intersection of Elizabeth Avenue and Broad Street.

Almanzar exited his vehicle, approached defendant's truck, and stepped up onto its running board.  Almanzar identified himself as a police officer several times and ordered defendant to shut off the truck's engine.  Defendant replied, "I'm not f*****g stopping," and accelerated his truck, causing Almanzar to be thrown from the vehicle.  Almanzar fired one round at defendant's tires to try to stop the truck.  Michalczak, who had continued to follow the truck, observed Almanzar's encounter with defendant and heard Almanzar identify himself as a police officer several times.

Almanzar's shot had no effect on the mobility of defendant's truck. Defendant accelerated through the intersection and turned right on to Broad Street.  As he approached West Grand Street, defendant's truck struck a car driven by Erick Ramirez, which was stopped at a red light.  Defendant did not stop, fleeing down Broad Street.  He eventually became stuck in traffic at the intersection of Broad Street and Parker Road.

Police officers were in the area, having responded to a report of shots fired from Almanzar's encounter with defendant.  Officers Eric Cano and David

A-3308-21

Chrysler and Detective Raul Delaprida approached defendant's truck on foot. As they approached, the officers heard defendant put his truck in gear. The officers shouted to defendant to "stop" and to "put the truck in park," as defendant pulled out and around stopped cars, crossing the double-yellow line and proceeding into oncoming traffic. As he did so, he crashed into a minivan, injuring a pregnant woman, her husband, and their two children.

Defendant drove his truck toward Chrysler and Delaprida, who were standing in front of the truck. In response, the officers fired multiple rounds at defendant. Although shot in the leg, defendant ultimately drove between the officers and sped off. The officers pursued defendant.

According to black-box data recovered from defendant's truck, shortly before midnight, he sped through a red light at the intersection of Newark and North Avenues and struck a vehicle while traveling at approximately sixty-nine miles per hour. That car had just exited a supermarket parking lot and turned left onto Newark Avenue.

A twenty-four-year-old man was ejected from the backseat of the car. The victim was pronounced dead at the scene at 12:10 a.m. on July 9, 2016. An autopsy report stated his death was caused by blunt impact injuries throughout his body. The driver of the car and another passenger were also injured.

5

Defendant then struck several parked vehicles, one of which was demolished, and crashed into a building.

The pursuing officers soon arrived on scene. When they pulled defendant from the truck, he vomited. An officer observed that the vomit smelled of alcohol. Officers saw an alcoholic beverage container on the ground in the vicinity of the truck's driver's side and a container with undetermined contents inside the cab of the truck.

At approximately 4:00 a.m., investigators made a telephonic application to the Law Division for authority to obtain a blood draw from defendant and to search his vehicle for evidence of driving while intoxicated. Two officers, county homicide detective Christopher Scuorzo and Elizabeth officer Brian Clancy, provided sworn testimony in support of the application. Finding probable cause, a judge issued a search warrant for both the blood draw and the search of the cab of defendant's truck.

Pursuant to the warrant, at 5:25 a.m., approximately six hours after the crash, blood was drawn from defendant at University Hospital. At the time, defendant had a BAC of .123%, well above the legal limit of .04% for defendant as the holder of a commercial driver's license.

6

The hospital had drawn blood from defendant hours earlier at 1:11 a.m., ninety-three minutes after the crash. Defendant's medical records, which were later released to the State pursuant to a court order, established defendant's BAC was .183% at the time of the 1:11 a.m. draw. Pursuant to State Police extrapolation of the earlier blood draw, defendant's BAC was between .195% and .237% at the time of the fatal crash.

A grand jury indicted defendant, charging him with: (1) first-degree aggravated manslaughter while fleeing or eluding a law enforcement officer, N.J.S.A. 2C:11-4(a)(2); (2) first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1); (3) second-degree vehicular homicide, N.J.S.A. 2C:11-5(a); (4) two counts of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); (5) four counts of second-degree aggravated assault while fleeing or eluding a law enforcement officer, N.J.S.A. 2C:12-1(b)(6); and (6) two counts of second-degree eluding, N.J.S.A. 29-2(b). He also received several motor vehicle summonses.

Defendant moved to suppress the evidence obtained through the blood draw and requested a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). He argued the two officers who testified at the telephonic warrant

application made misrepresentations and omitted facts that, if revealed to the judge, would have resulted in a denial of the blood draw warrant.

On December 21, 2020, the trial court issued an oral decision denying defendant's request for a <u>Franks</u> hearing. The court found defendant failed to make the requisite showing the officers made statements that were deliberately false or with reckless disregard for the truth. A December 21, 2020 order memorialized the trial court's decision.

Defendant also moved to dismiss the indictment. He argued the State purposely misled the grand jury by failing to provide it with exculpatory evidence, providing a misleading recitation of the facts, and failing to instruct the grand jurors on the potential defenses of causation, necessity, and duress. On January 25, 2021, the trial court issued an oral decision denying the motion.

Defendant later moved to compel the State to produce a shooting reconstruction report from a detective who processed the truck after the fatal accident. The State opposed the motion, arguing it would offer the detective only as a fact witness and could not, therefore, be ordered to produce an expert report. On March 18, 2022, the court denied defendant's motion.

Pursuant to a plea agreement, defendant pled guilty to vehicular homicide in exchange for dismissal of the remaining counts of the indictment and the

motor vehicle summonses. At his plea hearing, defendant admitted driving the front end of a tractor-trailer at speeds exceeding sixty-five miles per hour on Newark Avenue during nighttime hours. He admitted he operated the truck in a reckless and dangerous manner far in excess of the speed limit and that he "consciously ignore[d] a substantial risk that someone would probably be killed" by his conduct. Defendant admitted his truck struck the vehicle from which the victim was ejected and that he caused the victim's death.

Pursuant to the plea agreement, the court sentenced defendant to a ten-year term of incarceration, with an eighty-five-percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. A June 16, 2022 judgment of conviction memorializes defendant's conviction and sentence.

This appeal follows. Defendant raises the following arguments.

> POINT I
>
> THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION FOR A HEARING PURSUANT TO FRANKS V. DELAWARE[, 438 U.S. 154 (1978)].
>
> POINT II
>
> THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO DISMISS THE INDICTMENT.

9

POINT III

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO COMPEL DISCOVERY.

II.

A.     Denial of Franks Hearing.

In Franks, the United States Supreme Court imposed limitations on when a defendant may "challenge the truthfulness of factual statements made in an affidavit supporting [a search] warrant . . . ."  438 U.S. at 155.  In State v. Howery, 80 N.J. 563, 568 (1979), the Court adopted the test and procedures announced in Franks, holding "New Jersey courts, in entertaining veracity challenges, need go no further than is required as a matter of Federal Constitutional law by Franks v. Delaware."

Under the Franks/Howery standard, a "presumption of validity with respect to the [evidence] supporting the search warrant" must be overcome before a defendant is entitled to an evidentiary hearing.  Franks, 438 U.S. at 171; accord Howery, 80 N.J. at 566.  "First, the defendant must make a 'substantial preliminary showing' of falsity in the warrant."  Howery, 80 N.J. at 567 (quoting Franks, 438 U.S. at 170).  Second, the defendant "must allege 'deliberate falsehood or reckless disregard for the truth,' pointing out with specificity the

10

portions of the warrant that are claimed to be untrue." Ibid. (quoting Franks, 438 U.S. at 171). "Finally, the misstatements claimed to be false must be material to the extent that when they are excised from the affidavit, that document no longer contains facts sufficient to establish probable cause." Id. at 568 (citing Franks, 438 U.S. at 171).

The same analysis applies when the defendant alleges the testifying party omitted material facts. See State v. Sheehan, 217 N.J. Super. 20, 25 (App. Div. 1987) ("[T]he defendant must make a substantial preliminary showing that the affiant, either deliberately or with reckless disregard for the truth, failed to apprise the issuing judge of material information which, had it been included in the affidavit, would have militated against issuance of the search warrant."); accord State v. Stelzner, 257 N.J. Super. 219, 235 (App. Div. 1992).

In State v. Broom-Smith, 406 N.J. Super. 228, 240 (App. Div. 2009), aff'd, 201 N.J. 229 (2010), we emphasized that a Franks/Howery hearing "is aimed at warrants obtained through intentional wrongdoing by law enforcement agents and requires a substantial preliminary showing" before a hearing is warranted. The Court recently reaffirmed, a "defendant's burden under Franks and Howery is high . . . ." State v. Desir, 245 N.J. 179, 198 (2021).

11

In support of his request for a <u>Franks</u> hearing, defendant argued Scuorzo and Clancy gave misleading testimony that shots were fired toward the back of defendant's truck, omitted the fact that shots were fired toward the front of the truck, and failed to note defendant did not drive the truck at high speeds until after he had been shot and injured. The omitted evidence, defendant argued, is exculpatory because it suggests he was fleeing at high speed from what he thought was a carjacking or to avoid being shot.

In addition, defendant argued the officers: (1) failed to inform the court the driver of the other vehicle in the fatal crash was under the influence of a drug when the crash occurred; (2) mischaracterized defendant as uncooperative at the scene of the fatal crash when they failed to inform the court he could not exit the truck on his own volition because of his gunshot wound and shattered glass in the cabin of the truck; (3) stated an alcohol container was found in the vicinity of the crash when an officer's body camera recording shows the container was not from defendant's truck; (4) gratuitously described the condition of an unoccupied parked car defendant struck as looking like a gum wrapper; (5) provided inadmissible expert testimony that a blood draw would be used to extrapolate defendant's BAC level at the time of the crash; and (6) testified as

to another officer's observation defendant smelled of alcohol and acted in a manner consistent with intoxication at the hospital after the crash.

The trial court's oral decision sets forth an exhaustive review of the testimony provided by Scuorzo and Clancy in support of the warrant application. After concluding the warrant was supported by probable cause, the court found defendant was not entitled to a Franks hearing. The court found the "omission, if I can call it that," of testimony concerning the speed at which defendant was driving prior to police gunfire "would not . . . have, in any way, shape, or form, impacted" the court's "determination that probable cause existed" to issue the blood draw warrant. The court noted the officers testified defendant had engaged in multiple motor vehicle violations, been in a crash, fled the scene of that crash, and drove the wrong way down a one-way street before officers shot at him. That evidence alone was sufficient to issue the blood draw warrant.

The court also found the medication in the blood of the driver of the other vehicle in the fatal crash were administered by paramedics as treatment for his severe injuries prior to his transportation to the hospital. In addition, the court found that even if the other driver was under the influence of a drug at the time of the crash, that information would not have been relevant to the court's analysis of whether probable cause existed to draw defendant's blood.

The court found testimony about defendant's gunshot injury and state of consciousness at the time officers removed him from the truck would not have changed the outcome of the warrant application, given the other evidence suggesting he was intoxicated. The court also found testimony regarding the discovery of an alcohol container in the area of the driver's side of the truck was accurate, even though the container was not ultimately connected to defendant, and relevant to the overall circumstances known to the officers at the time of the warrant application. If that testimony had been omitted, the court found, the warrant would still have been issued.

The court also found the testimony regarding the parked vehicle defendant struck to be relevant and accurate. That testimony tended to prove defendant was traveling at a high speed when he caused the fatal accident. The court also found Clancy's testimony regarding extrapolation of BAC results was appropriate. The officer did not testify as to defendant's BAC, which could not have been known to the officer at the time. Instead, he testified the results of a blood draw could be used to extrapolate defendant's BAC at the time of the crash, testimony that does not require expertise. Finally, the court found testimony relaying a non-testifying officer's observation that defendant smelled

14

of alcohol at the hospital was appropriate and, if excluded from the information presented to the warrant court, would not have resulted in a denial of the warrant.

Thus, the court concluded, there was no deliberate false statement made in support of the warrant application. Nor, the court found, did either officer make material statements in support of the warrant application with reckless disregard for the truth.

We have reviewed the record and find no basis on which to disturb the December 21, 2020 order. The trial court's oral decision is thorough and well-reasoned. Defendant made no showing the testimony of either Scuorzo or Clancy in support of the blood draw warrant contained a deliberate falsehood or was made with reckless disregard for the truth. As the trial court aptly found, the officers provided truthful testimony and did not omit material facts when describing defendant's conduct suggesting he may have been intoxicated while driving his truck. Defendant, therefore, was not entitled to a <u>Franks</u> evidentiary hearing.[1]

---

[1] We note the 1:11 a.m. draw of blood was performed by hospital staff for medical purposes. The BAC level determined from that sample was produced to the State in compliance with an unchallenged court order. The State used the hospital records based on the 1:11 a.m. blood draw to extrapolate defendant's BAC at the time of the fatal crash. Thus, even if the State had not obtained the blood draw warrant, it would have had evidence of defendant's BAC when he caused the fatal crash.

A-3308-21

B.    Motion to Dismiss Indictment.

"An indictment is presumed valid and should only be dismissed if it is 'manifestly deficient or palpably defective.'" State v. Feliciano, 224 N.J. 351, 380 (2016) (quoting State v. Hogan, 144 N.J. 216, 229 (1996)).  "A motion to dismiss is addressed to the discretion of the trial court, and that discretion should not be exercised except for 'the clearest and plainest ground.'" Ibid. (citation omitted).  We will disturb a trial court's decision on a motion to dismiss an indictment only for a clear abuse of discretion. Hogan, 144 N.J. at 229.

"At the grand jury stage, the State is not required to present enough evidence to sustain a conviction.  As long as the State presents 'some evidence establishing each element of the crime to make out a prima facie case,' a trial court should not dismiss an indictment." Feliciano, 224 N.J. at 380 (citations omitted).  "[A] court examining a grand jury record should determine whether, 'viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred and that the defendant committed it.'" Id. at 380-81 (quoting State v. Morrison, 188 N.J. 2, 13 (2006)).

The State may rely solely on circumstantial evidence. See Morrison, 188 N.J. at 13 (citing State v. Reyes, 50 N.J. 454, 459 (1967)).  "Credibility

16

determinations and resolution of factual disputes are reserved almost exclusively for the petit jury." State v. L.D., 444 N.J. Super. 45, 57 n.8 (App. Div. 2016) (quoting Hogan, 144 N.J. at 235).

"In seeking an indictment, the prosecutor's sole evidential obligation is to present a prima facie case that the accused has committed a crime." Hogan, 144 N.J. at 236. "Nevertheless, in establishing its prima facie case against the accused, the State may not deceive the grand jury or present its evidence in a way that is tantamount to telling the grand jury a 'half-truth.'" Ibid.

> [T]he grand jury cannot be denied access to evidence that is credible, material, and so clearly exculpatory as to induce a rational grand juror to conclude the State has not made out a prima facie case against the accused. If evidence of that character is withheld from the grand jury, the prosecutor, in essence, presents a distorted version of the facts and interferes with the grand jury's decision-making function.
>
> [Ibid. (citations omitted).]

Prosecutors have only a "limited duty" to inform the grand jury of exculpatory evidence. State v. Hyppolite, 236 N.J. 154, 165 (2018) (quoting Hogan, 144 N.J. at 237). An indictment should be dismissed for failure to present exculpatory evidence "only after giving due regard to the prosecutor's own evaluation of whether the evidence is 'clearly exculpatory,'" and "only in the exceptional case will a prosecutor's failure to present exculpatory evidence

to a grand jury constitute grounds for challenging an indictment." Hogan, 144 N.J. at 238-39. There are two factors to consider in evaluating potentially exculpatory evidence. First, the evidence must directly negate guilt by squarely refuting an element of the crime. Id. at 237. Second, the evidence must be clearly exculpatory. Ibid. The second requirement demands "an evaluation of the quality and reliability of the evidence [and its] . . . exculpatory. . . value . . . should be analyzed in the context of the nature and source of the evidence, and the strength of the State's case." Ibid. Evidence that requires a grand jury to assess a witness's credibility is not clearly exculpatory. Id. at 238.

"By its very nature, the grand jury does not consider a full and complete adversarial presentation, 'and the instructions are not made after consideration [and with the benefit] of the views of the defense.'" State v. Hogan, 336 N.J. Super. 319, 343 (App. Div. 2001) (alteration in original) (quoting State v. Schmidt, 213 N.J. Super. 576, 584 (App. Div. 1986)). "We do not believe that the prosecutor has the obligation on his own meticulously to sift through the entire record of investigative files to see if some combination of facts and inferences might rationally sustain a defense or justification." Ibid. "The rule should be that it is only when the facts known to the prosecutor clearly indicate

or clearly establish the appropriateness of an instruction that the duty of the prosecution arises." Ibid.

In support of his motion, defendant argued the State failed to produce the following evidence to the grand jury: (1) proof Almanzar was disciplined for his encounter with defendant;[2] (2) the entire body camera recording from Chrysler, which defendant claims shows officers were not in the path of the truck when defendant left Parker Road; (3) the testimony of Gustavo Castilla, who told a detective that at the Parker Road scene the officers ordered defendant to stop during the shooting, not before, and that "after the shooting, the truck took off"; (4) black box data from defendant's truck showing he was not speeding in the area of Parker Road and depressed his brakes after the first shots were fired at his truck; and (5) toxicology reports of the victim, the driver of the vehicle in the fatal crash, and the other passenger in that vehicle. In addition, defendant argued a detective was permitted to discuss defendant's BAC and BAC extrapolation, which defendant characterizes as expert testimony. Finally,

---

[2] The record suggests Almanzar was verbally reminded of the Attorney General's Use of Force Policy regarding shooting at the tires of moving vehicles. The Attorney General's Office and the County Prosecutor's Office found the use of force by the other officers was justified.

19

defendant argued the State failed to instruct the jurors on the potential defenses of causation, necessity, and duress.

On January 25, 2021, the trial court denied defendant's motion in an oral decision. The court found any evidence with respect to disciplinary action taken against the officers was not relevant to the State's burden to present prima facie evidence of the alleged crimes.

The court also found the footage from Chrysler's body camera recording not shown to the jury was not exculpatory and the testimony concerning the recording was not inaccurate. Nor, the court found, was Castilla's recollection of the events at Parker Road exculpatory. The court found the black box data not to be exculpatory and the witness testimony about defendant's actions at Parker Road was overwhelmingly indicative of criminal acts.

With respect to the presence of a drug in the blood of the other driver in the fatal accident, the court found the medication was likely administered by paramedics shortly after the accident. Moreover, the court reasoned, even if the other driver had ingested an illegal drug prior to the accident, that fact was not exculpatory, in light of the evidence that defendant drove through a red light at a high speed while highly intoxicated. The court did not address the toxicology reports of the victim or other passenger, but the same logic would apply.

20

The court found the detective's testimony recounting the BAC test results was permissible hearsay. The detective repeated the opinion of the expert who extrapolated defendant's BAC based on testing of his blood. Hearsay testimony, the court found, was permissible before the grand jury.

The court found that none of the defenses cited by defendant were clearly indicated by the evidence on which the State relied. Thus, the court concluded, the prosecutor was not obligated to instruct the grand jury on those defenses.[3]

Our review of the record reveals no grounds on which to reverse the trial court. The court's analysis of each of defendant's arguments with respect to the evidence presented to the grand jury is sound. Defendant identified no exculpatory evidence withheld from the grand jury. Nor can the prosecutor's presentation to the grand jury accurately be described as misleading. While defendant may try to persuade a petit jury to acquit him based on his version of events, the prosecutor is not obligated to proffer defendant's interpretation of the evidence to the grand jury. We also agree with the trial court's conclusion the evidence in the State's possession did not clearly indicate the grand jury should be instructed on the defenses of causation, necessity, or duress.

---

[3] The record does not contain a written order denying defendant's motion.

C.     Motion to Compel Discovery.

Prior to trial, the prosecutor advised the court and defense counsel that it would produce Sergeant Anastasio Anastasatos, a crime scene investigator, as a fact witness. Anastasatos processed defendant's truck for evidence due to the police-involved shooting and prepared a report of his findings.

Anastasatos and another detective examined and photographed the truck. He also documented any projectile-related damage and used flight path rods to estimate the path of the projectiles from the outside of the truck to points inside the truck. The rods provided a general directionality of the place from which the projectiles traveled into the truck.

Anastasatos did not include detailed information in his report. Nor did the report include an opinion as to the position of the police officers who fired at the truck. The State conducted no other analysis of the trajectory or directionality of the bullets to determine where the officers were standing when they fired at defendant's truck. The State made clear it did not intend to call Anastasatos as an expert witness.

After Anastasatos testified at an N.J.R.E. 104 hearing with respect to the admissibility of his fact witness testimony, defendant moved to compel the State to produce a bullet trajectory analysis based on Anastasatos's findings. He

22

argued that despite the State's claim Anastasatos would be called as a fact witness, it was apparent any testimony from him would be expert opinion. Thus, defendant argued, the State should be compelled to produce an expert report from Anastasatos. The State opposed the motion.

On December 14, 2021, the trial court appeared to deny the motion in an oral decision, when it stated, "[i]t's not . . . gonna be forthcoming . . . I can't force [the State] to give to you something [it] doesn't have and [is] not going to get." However, arguments on the motion were raised before the court over the next several months. On March 18, 2022, in an oral opinion, the trial court again denied the motion when it stated, "I just think it has been laid to rest. It really has to do exactly with what we talked about before, which is, again compelling the State to produce this shooting reconstruction, that's denied."[4]

"In New Jersey, an accused has a right to broad discovery after the return of an indictment in a criminal case." State v. Hernandez, 225 N.J. 451, 461 (2016). "Our 'open-file approach to pretrial discovery in criminal matters post-indictment' aims '[t]o advance the goal of providing fair and just criminal trials.'" Desir, 245 N.J. at 192-93 (quoting State v. Scoles, 214 N.J. 236, 252 (2013)). "The metes and bounds of the State's discovery obligation to the defense is found

---

[4] The record does not contain a written order denying the motion.

in <u>Rule</u> 3:13-3(b) . . . ." <u>Hernandez</u>, 225 N.J. at 462. The Rule requires the production of evidence "within the possession, custody or control of the prosecutor . . . ." <u>R.</u> 3:13-3(b)(1)(E), (G) and (H). However, "[e]ven under our criminal discovery rules . . . a prosecutor is not obligated to create tangible items of evidence . . . ." <u>State v. Gordon</u>, 261 N.J. Super. 462, 465 (App. Div. 1993).

"We accord substantial deference to a trial court's issuance of a discovery order and will not interfere with such an order absent an abuse of discretion." <u>Hernandez</u>, 225 N.J. at 461.

Having seen and heard Anastasatos testify at an N.J.R.E. 104 hearing, the trial court determined his intended fact witness testimony was admissible. Because the State did not intend to call Anastasatos as an expert, the trial court concluded, there was no basis, and no legal authority, to compel the State to direct Anastasatos to create an expert report for defendant. We agree. Defendant offers no convincing argument the trial court mistakenly exercised its discretion when it denied his motion to compel.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3308-21