SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Brian Tier (A-73-15) (077328)**

**Argued January 30, 2017 -- Decided May 2, 2017**

**Timpone, J., writing for a unanimous Court.**

In this appeal, the Court considers a question of first impression: What are a defendant's post-indictment reciprocal discovery obligations to the State regarding a defense witness's oral statements?

On March 7, 2012, officers responded to a report from a neighbor that C.L. and defendant Brian Tier, her boyfriend, were in a physical struggle. One officer knocked on C.L.'s front door, heard what sounded like a small dog barking, and knocked again, directing the occupants of the residence to open the door. The officer then heard the sound of a woman screaming, "Help! Help! He's trying to kill me!" and kicked down the door. Upon entry, the officers observed defendant on top of C.L., his hands around her throat, strangling her. The officers arrested defendant and, while en route to the hospital, obtained a detailed statement from C.L. regarding the events. A Mercer County grand jury returned an indictment, charging defendant with first-degree kidnapping and first-degree criminal attempt to commit murder.

At a status conference, the State took issue with the witness list defendant produced because it listed the names of three men but did not provide identifiers, addresses, or synopses of their anticipated testimony—which the State alleged was in violation of Rule 3:13-3(b)(2)(C). In response, defendant agreed to produce identifiers and addresses but argued against providing synopses. Defendant asserted that the Rule requires that synopses be produced only if they have already been reduced to writing. Defense counsel affirmed that no witness statement summaries had been prepared.

The trial court ordered the defense to produce witness synopses and to create them if they had not been previously drafted. The court specifically ordered defense counsel to provide the State with the reason why the witnesses are on the list. The Appellate Division summarily reversed the trial court's order, reasoning that a criminal defendant's disclosures are carefully limited by the strictures of Rule 3:13-3(b)(2).

The trial court granted a motion to stay defendant's trial pending the Court's ruling on the motion. The Court granted the State's motion for leave to appeal. 226 N.J. 205 (2016).

**HELD**: A plain reading of Rule 3:13-3(b)(2)(C) requires production of witness statements only if those statements have already been reduced to writing. Nothing in the rules precludes a trial court from ordering a defendant to designate witnesses as either character or fact witnesses, however. The Court encourages practitioners to participate in cooperative discovery in order to ease the burden on all parties involved.

1. Rule 3:13-3(b)(2)(C) reads, in pertinent part: "A defendant shall provide the State with all relevant material, including, but not limited to . . . the names, addresses, and birthdates of those persons known to defendant who may be called as witnesses at trial and their written statements, if any, including memoranda reporting or summarizing their oral statements." This Rule has not seen much review. (p. 8)

2. In State v. DiTolvo, 273 N.J. Super. 111 (Law Div. 1994), the State moved to bar a witness's testimony after the defendant refused to provide a written summary of the proposed testimony. The court reasoned that the criminal justice system had a strong interest in "broad and extensive discovery." Finding no competing interest in favor of defendant, and failing to discuss a criminal defendant's special constitutional status, the court ordered the defendant to produce a summary of the witness's proffered testimony or the court would bar the testimony. (pp. 8-9)

1

3.  State v. Williams, 80 N.J. 472 (1979), dealt with a collateral issue: whether summaries already in existence were required to be disclosed if the defendant had no intention of using them at trial. Because the request related to inculpatory evidence, the defendant had no duty to produce those documents. The Court recognized that "[e]vidential materials obtained in the exercise of [defense counsel's] professional responsibility are so interwoven with the professional judgments relating to a client's case, strategy and tactics that they may be said to share the characteristics of an attorney's 'work product,'" and that "[b]lanket discovery of the fruits of this kind of legal creativity and preparation may impact directly upon the freedom and initiative which a lawyer must have in order to fully represent his client." Id. at 479. (pp. 9-10)

4.  In addition to the confidentiality concerns raised by disclosure of work product, one of the underlying principles on which our criminal justice system is based is that a defendant "has a fundamental right to remain silent." Williams v. Florida, 399 U.S. 78, 112, 90 S. Ct. 1893, 1912, 26 L. Ed. 2d 446, 483 (1970) (Black, J., concurring in part and dissenting in part). This defendant agreed to reciprocal discovery, implicating the Rule and necessitating its review. See R. 3:13-3(b)(1). (p. 10)

5.  Rule 3:13-3(b)(2)(C) plainly requires a defendant to produce "the names, addresses, and birthdates of those persons known to defendant who may be called as witnesses at trial." Written statements, however, need only be produced if they exist. This result is unquestionably mandated by the language "if any," which modifies "written statements." The language following "if any" does not alter that result; it merely indicates that memoranda either reporting or summarizing a witness's oral statements constitute discoverable written statements for purposes of Rule 3:13-3(b)(2)(C). (pp. 11-12)

6.  The trial court's order was based upon a mistaken understanding of the applicable law, requiring reversal. However, the Court stops short of finding that the entire order was an abuse of discretion. Nothing in the court rules prevents the trial court from obligating defendant to identify a witness as either a character or fact witness. To the contrary, requiring a defendant to identify the category of witness not only alleviates some of the State's concern regarding the burden of investigating a never-ending list of potential witnesses, but falls in line with the Court's policy encouraging cooperation in the discovery process. (pp. 12-13)

The judgment of the Appellate Division is **AFFIRMED** as **MODIFIED**. The matter is **REMANDED** to the trial court for entry of a discovery order consistent with this opinion.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

BRIAN TIER,

    Defendant-Respondent.

> Argued January 30, 2017 – Decided May 2, 2017
>
> On appeal from the Superior Court, Appellate Division.
>
> Laura C. Sunyak, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (Angelo J. Onofri, Mercer County Prosecutor, attorney).
>
> Alison S. Perrone argued the cause for respondent (Law Office of Robin Kay Lord, attorney; Ms. Lord on the brief).
>
> Sarah E. Ross, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Christopher S. Porrino, Attorney General, attorney; Lila B. Leonard, on the brief).

JUSTICE TIMPONE delivered the opinion of the Court.

This appeal raises an issue of first impression for this Court: What are a defendant's post-indictment reciprocal discovery obligations to the State regarding a defense witness's oral statements?

Defendant Brian Tier was charged with the kidnapping and attempted murder of his girlfriend, C.L. In response to a discovery request, defendant produced only a list of the names of the three witnesses the defense intended to call at trial, with no additional information. The State countered with a request that defendant amend the disclosure to include dates of birth and addresses, as well as a proffer of each witness's expected testimony. Defendant refused. The trial court ordered the disclosure; the Appellate Division reversed.

It is a longstanding principle that the preference for "mutually broad discovery" in civil cases "is generally unobtainable" in criminal matters, in which we must strike a careful balance between the interests promoted by discovery and the need to preserve a defendant's constitutional rights. State v. Cook, 43 N.J. 560, 563 (1965).

We find that a plain reading of Rule 3:13-3(b)(2)(C) requires production of witness statements only if those statements have already been reduced to writing. Nothing in the rules precludes a trial court from ordering a defendant to designate witnesses as either character or fact witnesses, however. Accordingly, we affirm the Appellate Division's reversal of the discovery order as it relates to the witness statements and modify the panel's determination that the trial

2

court improperly ordered defendant to designate fact and character witnesses.

                                    I.

This matter comes to us by interlocutory appeal; no trial has commenced. The underlying allegations have been gleaned from the State's briefing.

On March 7, 2012, officers from the Hamilton Police Department responded to a report from a neighbor that C.L. and defendant were in a physical struggle outside her residence near her red Toyota Scion. When the officers arrived, they found the Scion but no signs of a struggle.

Officer Aaron Kulak, accompanied by Officer Ryan Bitner, knocked on her front door. Kulak heard what sounded like a small dog barking and knocked again, directing the occupants of the residence to open the door. Kulak then heard the sound of a woman screaming, "Help! Help! He's trying to kill me!" In response to the continuing screams for help, Kulak kicked down the door. Upon entry, Kulak and Bitner observed defendant on top of C.L., his hands around her throat, strangling her. The officers arrested defendant and, while en route to the hospital, obtained a detailed statement from C.L. regarding the events.

On May 16, 2012, a Mercer County grand jury returned an indictment, charging defendant with first-degree kidnapping,

N.J.S.A. 2C:13-1, and first-degree criminal attempt to commit murder, N.J.S.A. 2C:11-3 and N.J.S.A. 2C:5-1.

At a status conference held on September 25, 2015, the State took issue with the witness list defendant produced because it listed the names of three men but did not provide identifiers, addresses, or synopses of their anticipated testimony -- which the State alleged was in violation of Rule 3:13-3(b)(2)(C). In response, defendant agreed to produce identifiers and addresses but argued against providing synopses. Defendant asserted that the Rule requires that synopses be produced only if they have already been reduced to writing. Defense counsel affirmed that no witness statement summaries had been prepared.

The trial court, in an oral decision, ordered the defense to produce witness synopses and to create them if they had not previously been drafted. The court specifically ordered defense counsel to provide the State with the "reason why they're on [defendant's] witness list[,] [a]nd[,] if they are character witnesses, how long that witness has known the defendant and what kind of relationship or under what circumstances did they" know defendant.

On February 17, 2016, on an interlocutory appeal, the Appellate Division summarily reversed the trial court's order, reasoning that, unlike the broad discovery obligation in civil

4

cases, a criminal defendant's disclosures are carefully limited by the strictures of Rule 3:13-3(b)(2).

In order to preserve the State's appeal of the Appellate Division order, the trial court granted a motion to stay defendant's trial pending this Court's ruling on the motion. We granted the State's motion for leave to appeal. 226 N.J. 205 (2016). We also granted the Attorney General leave to appear as amicus curiae.

## II.

### A.

The State submits that the Appellate Division's order narrowed the confines of Rule 3:13-3(b)(2)(C) to "an unreasonable and impermissible degree." The State highlights New Jersey's preference for "broad reciprocal discovery" and policy against gamesmanship and surprise. Recognizing that its requested result is not commanded by the plain language of the Rule, the State urges this Court to follow the Rule's reciprocal discovery "spirit." The State buttresses its request with the theory that, if the Court applies the plain language of the Rule, defense attorneys would not reduce witness statements to writing, necessitating mid-trial adjournments to permit the State time to investigate or, in extreme cases, exclusion of defense witnesses. Finally, the State acknowledges that its entitlement to discovery is limited by constitutional

5

constraints, but asserts that requiring defendant to put into writing what he already knows does not trigger such a concern.

## B.

Defendant contends that the court rules relating to criminal prosecutions, as written, are carefully balanced between the dual goals of truth seeking and protection from false prosecution. Defendant notes that ensuring proper balance has led to a significant limitation of prosecutorial discovery from the defense. With that backdrop, defendant concludes the trial court erred in attempting to level the playing field by imposing identical discovery obligations on the State and the defense, when constitutional and procedural rights are purposefully skewed in a defendant's favor. Defendant concludes that requiring the creation of a statement or summary for prosecutorial use both infringes on his constitutional rights and impairs his ability to make tactical judgments.

## C.

The Attorney General reiterates the State's practicality argument against limiting defendant's obligation under the Rule, theorizing that a defendant would hereinafter be encouraged to take only oral statements from potential witnesses. The Attorney General also contends that: (1) such a decree places an onerous burden on the State to investigate every witness on the defense's list, contrary to the principle that the outcome

of litigation should depend on its merits; (2) a narrow reading of the Rule will result in delays in trial calendars, resulting from the State's increased investigative need and inability to raise issues before trial; (3) this outcome is best served by limited discovery, which should be the exception and not the rule; and (4) recent precedent from this Court has expanded the State's discovery obligations, so a defendant's obligation should likewise expand.

### III.

Inherent in this Court's "power to make rules concerning the administration, practice and procedure of the courts of this State" is the broad power to interpret court rules. State v. Leonardis, 71 N.J. 85, 108-09 (1976). Our review of the meaning or scope of a court rule is de novo; we do not defer to the interpretations of the trial court or Appellate Division unless we are persuaded by their reasoning. State v. Hernandez, 225 N.J. 451, 461 (2016). While this Court generally shows substantial deference to a trial court's discovery order, not interfering with it absent an abuse of discretion, we do "not defer . . . to a discovery order . . . 'based on a mistaken understanding of the applicable law.'" State v. Stein, 225 N.J. 582, 593 (2016) (quoting Hernandez, supra, 225 N.J. at 461).

### A.

7

This case turns on the interpretation of Rule 3:13-3. Addressing a defendant's obligations, the Rule reads, in pertinent part:

> A defendant shall provide the State with all relevant material, including, but not limited to . . . the names, addresses, and birthdates of those persons known to defendant who may be called as witnesses at trial and their written statements, if any, including memoranda reporting or summarizing their oral statements.
>
> [R. 3:13-3(b)(2)(C).]

This Rule has not seen much review. Indeed, a lone published Law Division opinion discussed the breadth of discovery obligations under the Rule. See State v. DiTolvo, 273 N.J. Super. 111, 115-17 (Law Div. 1994) (discussing same relevant language in prior version of Rule, which has since been renumbered). In DiTolvo, the State moved to bar a witness's testimony after the defendant refused to provide a written summary of the witness's proposed testimony. Id. at 113. The defendant reasoned that because the witness never gave a written statement, there was nothing to produce. Ibid. The court found the Rule ambiguous and subject to multiple interpretations, requiring the court to weigh the competing interests. Id. at 115-16. The court reasoned that the criminal justice system generally had a strong interest in "broad and extensive discovery," the purpose of which "is to prevent surprise,

8

eliminate gamesmanship, and afford a party an opportunity to obtain evidence and research law in anticipation of evidence and testimony which an adversary will produce at trial." Id. at 115 (citing State v. Williams, 80 N.J. 472, 482 n.2 (1979) (Schreiber, J., dissenting)). Finding no competing interest in favor of defendant, and failing to discuss a criminal defendant's special constitutional status, the court ordered the defendant to produce a summary of the witness's proffered testimony or the court would bar the testimony. Id. at 117.

While this Court has addressed the discovery obligations of a defendant in a criminal proceeding, we have yet to opine on the issue squarely before us. Williams, supra, dealt with a collateral issue: whether summaries already in existence were required to be disclosed if the defendant had no intention of using them at trial. 80 N.J. at 475. Because the request related to inculpatory evidence, we held that the defendant had no duty to produce those documents. Ibid. Clearly, a holding to the contrary would chill the defense's investigation and infringe on the defendant's right to effective assistance of counsel. Id. at 478.

In so holding, we recognized that "[e]vidential materials obtained in the exercise of [defense counsel's] professional responsibility are so interwoven with the professional judgments relating to a client's case, strategy and tactics that they may

9

be said to share the characteristics of an attorney's 'work product,'" and that "[b]lanket discovery of the fruits of this kind of legal creativity and preparation may impact directly upon the freedom and initiative which a lawyer must have in order to fully represent his client." Id. at 479.

In addition to the confidentiality concerns raised by disclosure of work product, one of the underlying principles on which our criminal justice system is based is that a defendant "has an absolute, unqualified right to compel the State to investigate its own case, find its own witnesses, prove its own facts, and convince the jury through its own resources," and "[t]hroughout the process[,] the defendant has a fundamental right to remain silent, in effect challenging the State at every point to: 'Prove it!'" Williams v. Florida, 399 U.S. 78, 112, 90 S. Ct. 1893, 1912, 26 L. Ed. 2d 446, 483 (1970) (Black, J., concurring in part and dissenting in part). A defendant who agrees to reciprocal discovery relinquishes the right to "do nothing." This defendant agreed to reciprocal discovery, implicating the Rule and necessitating its review. See R. 3:13-3(b)(1).

B.

The concerns we expressed in Williams and the principles espoused by Justice Black infuse our discussion of Rule 3:13-3(b)(2)(C). In interpreting a court rule, we apply the ordinary

10

canons of statutory interpretation.  Wiese v. Dedhia, 188 N.J. 587, 592 (2006).  "Accordingly, . . . the analysis must begin with the plain language of the rule."  Ibid.  The rules should not be read in isolation; rather, they must be read "in context with related provisions so as to give sense to the [court rules] as a whole."  Ibid. (alteration in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)).  Where a rule contains both general provisions and specific provisions, the latter control over the former.  Clymer v. Summit Bancorp, 171 N.J. 57, 69-70 (2002).

Contrary to the Law Division's holding in DiTolvo, supra, 273 N.J. Super. at 115, we find the language in Rule 3:13-3(b)(2)(C) to be unambiguous.  The Rule plainly requires a defendant to produce "the names, addresses, and birthdates of those persons known to defendant who may be called as witnesses at trial."  R. 3:13-3(b)(2)(C).  Written statements, however, need only be produced if they exist.  Ibid.  This result is unquestionably mandated by the language "if any," which modifies "written statements."  Ibid.  The language following "if any" does not alter that result; it merely indicates that memoranda either reporting or summarizing a witness's oral statements constitute discoverable written statements for purposes of Rule 3:13-3(b)(2)(C).  However, if the defense has not memorialized

11

the witness statement in some form of writing there is nothing to produce.

The State urges that the Rule is ambiguous and therefore this Court must resort to rules of statutory interpretation. To this end, the State argues that the preliminary sentence in the Rule creates a presumption in favor of discovery, limited only by the subsections thereunder. Even if we found the Rule to be ambiguous, that argument fails. The preamble of subsection (b)(2) is general and reads "[a] defendant shall provide the State with all relevant material, including, but not limited to, the following." R. 3:13-3(b)(2). Each subsection then lists specific limits on that discovery. See generally R. 3:13-3(b)(2)(A) to -(E). Subsection (b)(2)(C)'s demarcation between oral statements and statements reduced to writing controls over the general broad discovery provision of the opening. See Clymer, supra, 171 N.J. at 69-70.

Based on the plain reading of the Rule, we find the trial court abused its discretion when it ordered defendant to create a proffer of evidence in the present case. Undeniably, the Rule does not require defendant to generate a written witness statement where none exists. See R. 3:13-3(b)(2)(C). The trial court's order, therefore, was based upon a "mistaken understanding of the applicable law," requiring reversal. See Stein, supra, 225 N.J. at 593.

12

We stop short, however, of finding that the entire order was an abuse of discretion. Nothing in the court rules prevents the trial court from obligating defendant to identify a witness as either a character or fact witness. To the contrary, requiring a defendant to identify the category of witness not only alleviates some of the State's concern regarding the burden of investigating a never-ending list of potential witnesses, but falls in line with this Court's policy encouraging cooperation in the discovery process.

In sum, we find the portion of the trial court's order requiring the assemblage of witness statements to be an abuse of discretion as it was an apparent deviation from the applicable Rule. We approve, however, of the trial court's order requiring defense counsel to identify only the category of witnesses as fact or character. We encourage practitioners to participate in cooperative discovery in order to ease the burden on all parties involved.

IV.

The judgment of the Appellate Division reversing the trial court's discovery order is affirmed as modified, and the matter is remanded to the trial court for entry of a discovery order consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion.

13