**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3623-16T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

INNIS J. HENDERSON, JR.,

     Defendant-Appellant.

_____

Submitted March 12, 2019 – Decided April 5, 2019

Before Judges Hoffman and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 15-08-2401.

Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Linda A. Shashoua, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Innis J. Henderson, Jr. appeals from his conviction of false imprisonment, theft from the person, conspiracy to commit false imprisonment, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon following the denial of his motion to suppress his recorded statement to police and the admission over objection of the testimony of a newly disclosed witness for the State. We determine the portion of the interview by police prior to the administration of Miranda[1] warnings was not a custodial interrogation. We further determine the admission of the testimony of the newly disclosed witness was not error. Accordingly, we affirm.

We briefly recount the underlying facts. On March 25, 2015, representatives of a bail bondsman attempted to apprehend Eric Webb, who was wanted for failing to appear at a court hearing. The bondsman had posted a $100,000 bail bond for Webb. An employee of the bondsman enlisted the assistance of several individuals, who were not licensed bondsmen, to apprehend Webb. The employee convinced a friend of Webb to lure him to the friend's residence under the pretense of paying Webb money owed to him. Defendant and co-defendants, Ralph M. Lemar, Marvela S. Brown-Bailey, Jovani A. Diaz,

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

and Brian K. Williams, arrived at the residence in advance of Webb and waited for him. Webb arrived in a car accompanied by F.E., a seventeen-year-old minor.[2] Both cars containing defendants moved to block Webb from driving away.

Defendant and Lemar went to the driver's side of Webb's car and ordered him to exit the vehicle or he would be shot. F.E. exited the vehicle immediately. Webb put his car in reverse, ramming the other vehicles, and fled the scene.

Lemar reentered his vehicle with Diaz and Williams and pursued Webb at high speed until Webb crashed. Meanwhile, defendant stayed with F.E., told him to lie on the ground, and handcuffed him. After placing F.E. in the back seat of Brown-Bailey's car, they drove after Webb. F.E. was told he would not be released until Webb was apprehended. While F.E. was in the back seat, defendant allegedly punched him, put a knife to his throat, and took a cell phone and approximately $250 in cash from him.

Defendant and Brown-Bailey remained in telephone contact with the other defendants during the pursuit. When Webb pulled into a motel parking lot after suffering a blown tire, Diaz pulled her vehicle next to the driver's side of Webb's vehicle, blocking his exit from that side of the car. Lemar and Williams went to

---

[2] We use initials to protect the minor victim's privacy.

the passenger side and allegedly assaulted Webb. Williams then handed Lemar a tire iron that Lemar used to strike Webb. Webb was then dragged out of the car and repeatedly punched.

Diaz took Webb's cell phone and $360 in cash from Webb's pockets. Lemar grabbed Webb's designer sunglasses and gold chain. The cell phone was recovered from Diaz's belongings, the cash was recovered from Diaz's pockets, and the sunglasses were turned over by Lemar. The tire iron was recovered from the front seat of the vehicle driven by Diaz. DNA analysis revealed the clothing belonging to Lemar and Williams had Webb's blood on them.

By the time Brown-Bailey's vehicle arrived, police were already on the scene. Lemar and Williams were arrested at the scene. Police instructed Brown-Bailey to go to police headquarters. She and defendant complied and waited at the police station.

After police took statements from Webb's friend, F.E., and Brown-Bailey, they began questioning defendant at 2:26 a.m. By this point, police knew defendant and Brown-Bailey were in a red car at Webb's friend's house, F.E. had been handcuffed and claimed to have been robbed and threatened with a knife, and had been driven in the rear of Brown-Bailey's car. Police were also aware

that Brown-Bailey and defendant had given conflicting accounts while at the motel as to where they had been.

With this information, police began interviewing defendant without administering <u>Miranda</u> warnings to him. The police elicited from defendant that he was in Brown-Bailey's car, he was present when Webb rammed the car and drove away, he had handcuffed F.E., and F.E. had been transported in Brown-Bailey's car, from which he escaped.

The interview was conducted by two police officers in a room at the police station with the door closed. Defendant was not told he was free to leave. He was not handcuffed during the interview and had not yet been placed under arrest or charged with a crime.

The interview had gone on for approximately twenty minutes when the officers told defendant:

> OFFICER 2: You're story's getting a little mixed up here. You've been – you're messing up here.
>
> OFFICER 1: I just want the truth, man.
>
> OFFICER 2: And you're not telling the truth. You're gonna end up back there with them in a minute. So, you need to start telling the truth here, Bro. You feel me?
>
> HENDERSON: Yeah, I feel you, Bro.

Immediately thereafter, <u>Miranda</u> warnings were administered to defendant. The interview continued after he waived his constitutional rights.

Following the conclusion of defendant's interview, the police took a second statement from Brown-Bailey. She then admitted defendant was in the car with her. After obtaining a search warrant, police searched Brown-Bailey's car and recovered the knife, a handcuff key, F.E.'s cell phone, and a quantity of cash.

In June 2015, a Camden County Grand Jury returned an indictment charging defendant with third-degree terroristic threats, N.J.S.A. 2C:12-3(a); first-degree kidnapping, N.J.S.A. 2C:13-l(b)(1) and (2); first-degree robbery, N.J.S.A. 2C:15-l(a)(1) and (2); second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1(a)(1) and (2); second-degree conspiracy to commit kidnapping, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:13-l(b)(1) and (2); third degree possession of a weapon, for an unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d).

Defendant moved to suppress the portions of his statement taken before <u>Miranda</u> warnings were administered and the remainder of his statement as fruit of the poisonous tree. The State argued defendant was not in custody as he went

to the police station on his own and was not handcuffed. Defendant contended he was in custody since he was already a suspect and a reasonable person would not have felt free to leave. The trial court denied the motion, finding defendant was not in custody when he went to the police station on his own as a witness, was not in handcuffs, and had elected to answer non-coercive, investigative questioning.

The case proceeded to trial. Following jury selection earlier in the week, on Friday, September 23, 2016, the State disclosed the existence of an additional witness who had not previously been disclosed. The new witness was F.E.'s sister. On Monday, September 26, 2016, the State first disclosed its intention to call her at trial. Opening statements began the following day. The new witness testified on Wednesday, September 28, 2016.

The defense was not supplied with the address or birthdate of the witness. The prosecutor represented that she had no criminal history. The State contended detectives never interviewed the witness and did not realize she had useful information until they interviewed F.E.'s mother on September 23, 2016.

Defendant objected to the late addition to the witness list, arguing the defense had been developed based on the information disclosed in discovery, and the late addition of the witness added previously unknown facts relevant to

the kidnapping and illegal restraint charges. The defense believed F.E. would be the only witness as to the events that transpired after he entered Brown-Bailey's car. The defense asserts F.E.'s credibility was suspect since he worked as a runner for Webb's heroin distribution, and his sister was used to corroborate the testimony of F.E. and his mother.

The trial judge considered the witness equally available to all parties, and noted the defense was not precluded from interviewing her. He further concluded the witness's expected testimony is "not something completely new to the defense." The judge overruled the objection but permitted defense counsel to interview the witness just before she testified.

Defendant elected not to testify and presented no witnesses. Brown-Bailey elected to testify. She stated she did not know defendant, who had arrived in Lemar's car. When Lemar chased Webb, defendant and F.E. needed a ride. Brown-Bailey said she offered to drive F.E. home. She denied ever seeing defendant wrestle with or handcuff F.E., and did not see a knife or witness any theft.

Brown-Bailey admitted she lied to police about defendant's name, the vehicle he traveled in, and F.E. having been in her car. She claimed she lied for fear of losing her job.

The jury found defendant guilty of a disorderly persons offense of false imprisonment, N.J.S.A. 2C:13-3; third-degree theft from the person, 2C:20-3(a); a disorderly persons offense of conspiracy to commit false imprisonment, N.J.S.A. 2C:5-2(a)(1) and 2C:13-3; third-degree possession of a weapon for an unlawful purpose, 2C:39-4(d); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d). Defendant was acquitted of kidnapping, armed robbery, conspiracy, criminal restraint, and terroristic threats. Following merger, defendant was sentenced to concurrent terms yielding an aggregate sentence of a five-year prison term. This appeal followed.

Defendant raises the following points:

> POINT ONE
>
> DEFENDANT WAS PREJUDICED BY THE TRIAL COURT'S DECISION TO PERMIT THE STATE TO OFFER A WITNESS WHO HAD NOT BEEN DISCLOSED IN DISCOVERY.
>
> POINT TWO
>
> DEFENDANT'S STATEMENT, WHICH BEGAN PRIOR TO THE ADMINISTRATION OF THE MIRANDA WARNINGS, SHOULD HAVE BEEN SUPPRESSED.

For the reasons that follow, we reject these contentions and sustain defendant's conviction.

A-3623-16T2

We first address whether the trial court erred in allowing the testimony of the State's witness who was not disclosed in discovery, was not on the witness list, and was not revealed until five days before she testified at trial. Defendant claims the judge abused his discretion in allowing the newly identified witness to testify. We are unpersuaded by this argument.

"The rules of discovery . . . are designed to accomplish fairness." State v. Bellamy, 329 N.J. Super. 371, 376 (App. Div. 2000) (quoting State v. Kearney, 109 N.J. Super. 502, 505 (Law Div. 1970)). A defendant is entitled to know the State's case against him within reasonable time to permit the preparation of a defense. R. 3:13-3. Indeed, "a trial is a search for the truth." State v. R.D., 345 N.J. Super. 400, 406 (App. Div. 2001).

Rule 3:13-3 governs the materials subject to compulsory discovery on both sides. The prosecution must provide the "names, addresses, and birthdates of any persons whom the prosecutor knows to have relevant evidence or information including a designation by the prosecutor as to which of those persons may be called as witnesses." R. 3:13-3(b)(1)(F).

Rule 3:13-3(f) contemplates that a trial judge will take appropriate action when the State fails to comply with its continuing duty to disclose relevant information. State v. Clark, 347 N.J. Super. 497, 508 (App. Div. 2002). The

10

Rule provides there is a continuing duty to provide discovery if a party discovers additional evidence or witnesses not previously disclosed.

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule . . . it may order such party to permit the discovery of materials not previously disclosed, grant a continuance or delay during trial, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such order as it deems appropriate.
>
> [R. 3:13-3(f).]

We review a trial court's decision regarding the appropriate remedy for a discovery violation under an abuse of discretion standard. State v. Tier, 228 N.J. 555, 561 (2017). However, we will reverse a conviction only if we find that the State's discovery violation prejudiced a defendant by denying him a fair trial. State v. Blake, 234 N.J. Super. 166, 172-73 (App. Div. 1989).

Trial courts are vested with "broad discretion to determine the appropriate sanctions to be imposed" when a discovery violation occurs. State v. Marshall, 123 N.J. 1, 130 (1991). Still, "it is axiomatic that '[b]efore invoking the ultimate sanction of barring a witness, the court should explore alternatives.'" State v. Washington, 453 N.J. Super. 164, 190 (App. Div. 2018) (alteration in original) (quoting State v. Dimitrov, 325 N.J. Super. 506, 511 (App. Div. 1999)).

11

Notably, defendant did not request a trial continuance. Five days elapsed between the disclosure of the new witness and the day she testified. Other than a bald assertion that the late disclosure prejudiced his defense, defendant does not explain how he was unfairly prejudiced. Here, there is no suggestion the State willfully withheld the identity of the witness. On the contrary, the State disclosed the identity of the new witness immediately upon learning she possessed knowledge of relevant facts. The State also provided a summary of her expected testimony. The witness testified consistently with the summary. Moreover, her testimony was merely corroborative. Thus, even if this were deemed a discovery violation, the trial court acted within its proper discretion in giving counsel an opportunity to interview the new witness rather than barring her testimony. Defendant was not deprived of a fair trial.

We next address the admissibility of defendant's recorded interview by the police. Defendant contends the entire interview was a custodial interrogation; thus, the portion of the interview conducted before the Miranda warnings were administered must be suppressed. He further contends the remainder of the interview must be suppressed under the fruit of the poisonous tree doctrine. We are unpersuaded by these arguments.

A-3623-16T2

"A confession or incriminating statement obtained during a custodial interrogation may not be admitted in evidence unless a defendant has been advised of his or her constitutional rights." State v. Hubbard, 222 N.J. 249, 265 (2015) (citing Miranda, 384 U.S. at 492). In particular, the police must inform such a person:

> that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.
>
> [Miranda, 384 U.S. at 479.]

"A defendant may waive any or all of those rights; however, that waiver must be 'voluntary, knowing and intelligent.'" Hubbard, 222 N.J. at 265 (quoting State v. Hreha, 217 N.J. 368, 382 (2014)).

"The failure to administer Miranda warnings prior to custodial interrogation 'creates a presumption of compulsion.' Hence, if warnings were required but not given, the unwarned statements must be suppressed – even when they 'are otherwise voluntary within the meaning of the Fifth Amendment.'" Ibid. (quoting Elstad, 47 U.S. at 307).

"Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise

deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. The right to Miranda warnings "turns on the potentially inquisitorial nature of police questioning and the inherent psychological pressure on a suspect in custody." State v. P.Z., 152 N.J. 86, 102 (1997) (citing Miranda, 384 U.S. at 445-58).

"Custody" does not require a formal arrest, physical restraint in a police station, or the use of handcuffs, and may occur in a place other than a police station. Hubbard, 222 N.J. at 266. "If the questioning is simply part of an investigation and is not targeted at the individual because she or he is a suspect, the rights provided by Miranda are not implicated." State v. Timmendequas, 161 N.J. 515, 614-15 (1999) (citing State v. Pierson, 223 N.J. Super 62, 67 (App. Div. 1998)). "Miranda warnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.'" Hubbard, 222 N.J. at 266 (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)).

The determination of whether a person is in custody is an objective one, independent of "the subjective views harbored by either the interrogating officers or the person being questioned." State v. O'Neal, 190 N.J. 601, 622 (2007) (quoting Stansbury v. California, 511 U.S. 318, 323 (1994)). Judicial

14

assessment of whether a suspect has been placed in custody is fact-sensitive, and must be considered through a case-by-case approach in which the totality of the circumstances is examined. Ibid. The critical factor "is whether there has been a significant deprivation of the suspect's freedom of action based on the objective circumstances, including the time and place of the interrogation, the status of the interrogator, the status of the suspect, and other such factors." P.Z., 152 N.J. at 103; see also Timmendequas, 161 N.J. at 614. It also involves consideration of the length of the interrogation, the nature of the questions, and the conduct of the interrogators. State v. Smith, 374 N.J. Super. 425, 431 (App. Div. 2005); State v. Coburn, 221 N.J. Super. 586, 595-96 (App. Div. 1987).

"When reviewing a trial court's decision to grant or deny a suppression motion, appellate courts 'must defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record.'" State v. Dunbar, 229 N.J. 521, 538 (2017) (quoting Hubbard, 222 N.J. at 262). "We defer to those findings of fact because they 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Hubbard, 222 N.J. at 262 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "We will set aside a trial court's findings of fact only when such findings 'are clearly mistaken.'" Dunbar, 229 N.J. at 538

15

(quoting Hubbard, 222 N.J. at 262). A trial court's interpretation of the law and the consequences that flow from established facts are not entitled to special deference and are reviewed de novo. Hubbard, 222 N.J. at 263.

Applying these well-established standards, we consider whether defendant was subjected to "custodial interrogation" when interviewed by police at the station house. The trial court concluded that the unwarned statements defendant made to police were admissible, finding that Miranda warnings were not necessary at that point because defendant voluntarily appeared at the station house, was not yet in custody, and had elected to answer non-coercive, investigative questioning. We agree.

As noted by the trial court, defendant was not placed under arrest or handcuffed at the scene. He went to the police station on his own. Following interviews of other witnesses, he was taken to a room where he was interviewed by two police officers with the door closed but unlocked. The officers did not block the door. He remained uncuffed during the entire interview. He had not yet been charged. The judge found "no facts" that "tend to establish that [defendant] believed he was not free to just get up and leave."

The judge further noted the police were attempting to learn what had transpired during the incident, which involved multiple individuals, two

locations, several vehicles, several police departments, a car in the woods, an injured victim, and conflicting versions of what had happened. The questioning was simply part of an investigation that had not yet focused on defendant.

Although conducted in the early morning hours, the interview was not prolonged. Defendant was then twenty-four years old. This was not his first involvement with law enforcement. He had previously been prosecuted as both a juvenile and an adult. No physical force was involved. The questioning before the administration of <u>Miranda</u> warnings was not coercive.

Sufficient credible evidence in the record supports the trial court's finding that defendant was not subjected to custodial interrogation prior to the administration of <u>Miranda</u> warnings. Defendant does not contend the <u>Miranda</u> warnings he subsequently received were deficient. The record demonstrates beyond a reasonable doubt that defendant knowingly, intelligently, and voluntarily waived his right to remain silent and to provide a statement without an attorney being present after receiving <u>Miranda</u> warnings. For these reasons, the trial court properly denied suppression of the interview.

Last, we address an error in the judgment of conviction. The transcript of the sentencing hearing reveals the trial court merged count eleven into count eight for sentencing purposes. The judgment of conviction incorrectly states

A-3623-16T2

defendant was sentenced to a concurrent five-year prison term on count eleven.

We remand for the limited purpose of entry of an amended judgment of conviction reflecting the merger of count eleven.

Affirmed and remanded for entry of a corrected judgment of conviction. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-3623-16T2