**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4928-18T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WILLIAM HERCHAKOWSKI,

    Defendant-Appellant.

_____

Submitted March 24, 2020 – Decided April 20, 2020

Before Judges Fisher and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Municipal Appeal No. 19-004.

Wolf Law, PC, attorney for appellant (Robert W. Ruggieri, of counsel and on the brief; Randolph H. Wolf, on the briefs).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica Lucinda do Outeiro, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following denial of his suppression and dismissal motions in municipal court, defendant William Herchakowski entered a conditional guilty plea to driving while intoxicated (DWI), N.J.S.A. 39:4-50. The court sentenced defendant to a three-month revocation of his driving privileges, twelve hours at an Intoxicated Driver Resource Center, and imposed appropriate fines and penalties. Upon de novo review, the Law Division judge denied defendant's motions, found defendant guilty, and imposed the identical sentence.

On appeal, defendant raises the following points for our consideration:

POINT I.

THE COURTS BELOW ERRED IN DENYING THE MOTION TO DISMISS AND/OR BAR EVIDENCE AND IN DENYING THE MOTION TO SUPPRESS. IF EITHER OF THE MOTIONS HAVE [SIC] BEEN GRANTED, THE CHARGES AGAINST DEFENDANT WOULD HAVE HAD TO BE DISMISSED FOR LACK OF EVIDENCE. THEREFORE, DEFENDANT'S GUILTY PLEA AND CONVICTION MUST BE SET ASIDE.

A. The decisions of the courts below to deny Defendant's Motion to Dismiss and/or Bar Evidence were erroneous and must be reversed. Defendant's attorney made a timely discovery request for production of the recording of the 9-1-1 call that led to Defendant's traffic stop. The State, however, did not follow through on the request until it was too late and the recording was permanently unavailable. While not deliberate, the failure of the State to do anything to obtain the discovery until it was too late cannot simply

be ignored.  The decisions of the courts below were based on nothing but assumptions – assumptions that had no basis in the record or in logic.

B.   The decisions of the courts below to deny Defendant's Motion to Suppress Evidence were erroneous and must be reversed.  If the information about the 9-1-1 call is barred, there is no proper basis for the traffic stop.  Even if the information about the call is considered, the information from that call is so vague and lacking in specifics that it is [sic] fails to satisfy the criteria established by the courts for a constitutionally permissible stop.  The decisions of the courts below were based on factual assumptions that are not supported by either the record or logic, and by a misunderstanding of the relevant law.

Finding no merit in these contentions, we affirm.

On the night of August 21, 2018, in response to a 9-1-1 dispatch, Rumson Police Officer Daniel Campanella stopped defendant's vehicle and arrested him for DWI.  Three days later, defendant's retained counsel demanded from the Rumson municipal prosecutor discovery, including the 9-1-1 dispatch recording, and "specifically request[ed]" that all recordings "be preserved."  Defendant did not receive the recording from the municipal prosecutor.

Three months later, on November 20, 2018 counsel requested the recording from the Monmouth County Sheriff's Office (MCSO) as "the entity responsible for the 9-1-1 service in that county."  In a letter dated December

3

17, 2018, the MCSO informed the prosecutor, who forwarded the correspondence, to defense counsel, that the recordings were only retained for ninety days. The MCSO also "provided the computer aided dispatch report."

No witnesses testified at the municipal court hearing. Instead, defendant and the prosecutor moved into evidence Campanella's narrative report, a Google map of the intersection at issue, counsel's letter demanding discovery from the municipal prosecutor, the letter from the MCSO, and the dispatch report. Campanella's report contained the sole account of his stop of defendant's vehicle, stating he

> was dispatched to the area of Rumson/Ward. A caller had reported an erratic driver that was driving erratically, went over Sea Bright Rumson Bridge and had made a hard left once over the bridge. I was near the area and knew it to be a neighborhood where there was [sic] only two ways out of the neighborhood and it is isolated. The caller had given a license tag number . . . . [that] came back to a silver BMW [registered to defendant], from [defendant's address] in Rumson which is in the direct neighborhood of where the vehicle turned into.
>
> As I was checking for the vehicle and driving south on [defendant's street] making my way to [defendant's] address I observed the vehicle in question with the exact plate number coming towards me. I turned around and stopped the vehicle on Washington Ave[nue] just west of [defendant's street].

A-4928-18T3

Following argument, the municipal court denied defendant's motions, ruling that the 9-1-1 dispatch provided Campanella with an articulable and reasonable suspicion to stop defendant's vehicle, and defendant was not prejudiced by the State's failure to preserve the 9-1-1 recording. Defendant entered a conditional guilty plea, reserving his right to appeal the motions. Following a trial de novo, the Law Division judge denied defendant's motions on similar grounds as the municipal court, convicted defendant of DWI, imposed an identical sentence, and stayed the sentence pending appeal.

On appeal defendant maintains both courts erroneously denied his "motion to dismiss the charges and/or bar evidence of the 9-1-1 call, and the motion to suppress the evidence flowing from the improper traffic stop." Our review following a trial de novo in the Law Division conducted on the record developed in the municipal court, however, is limited to "only the action of the Law Division and not that of the municipal court." State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001); see also State v. Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div. 2005). We therefore confine our review to the Law Division judge's decision. We address defendant's arguments in reverse order.

Defendant contends Campanella unlawfully stopped his vehicle because the officer did not have an articulable suspicion that defendant had committed a traffic violation. Defendant also argues the anonymous caller did not provide sufficient detail to relieve Campanella of his obligation to verify the information received before stopping defendant's vehicle. We disagree.

Our function as a reviewing court, generally, is to determine whether the findings of the Law Division "could reasonably have been reached on sufficient credible evidence present in the record." State v. Johnson, 42 N.J. 146, 162 (1964). We will reverse only after being "thoroughly satisfied that the finding is clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction." Ibid. "However, a trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference on appeal." State v. Ugrovics, 410 N.J. Super. 482, 487 (App. Div. 2009) (internal quotation and citation omitted). We owe no deference to conclusions of law made by trial courts in suppression decisions, which we instead review de novo. State v. Watts, 223 N.J. 503, 516 (2015).

Our Supreme Court has long recognized "a police officer is justified in stopping a motor vehicle when he has an articulable and reasonable suspicion

that the driver has committed a motor vehicle offense." State v. Locurto, 157 N.J. 463, 470 (1999). "The test is 'highly fact sensitive and, therefore, not readily, or even usefully, reduced to a neat set of legal rules.'" State v. Golotta, 178 N.J. 205, 213 (2003) (quoting State v. Nishina, 175 N.J. 502, 511 (2003)). "An informant's tip is a factor to be considered when evaluating whether an investigatory stop is justified." Ibid. "[T]he degree of corroboration necessary to uphold a stop of a motorist suspected of erratic driving" is reduced when the initial tip is provided by an anonymous 9-1-1 caller who provides an adequate description of the vehicle, the location and the purportedly erratic driving. Golotta, 178 N.J. at 218, 222. The Court has explained:

> The information must convey an unmistakable sense that the caller has witnessed an ongoing offense that implicates a risk of imminent death or serious injury to a particular person such as a vehicle's driver or to the public at large. The caller also must place the call close in time to his first-hand observations. When a caller bears witness to such an offense and quickly reports it by using the 9-1-1 system, those factors contribute to his reliability in a manner that relieves the police of the verification requirements normally associated with an anonymous tip.
>
> [Id. at 221-22.]

The content of the 9-1-1 call demonstrated that the caller based the information on first-hand observations made either close in time to those observations or as they were occurring. The caller not only identified defendant's vehicle as a silver BMW and provided the license plate number, but also reported the vehicle's location, allowing Campanella to identify defendant's vehicle and stop defendant in that vicinity. The caller's observation of defendant operating the vehicle in an erratic manner implicated a risk of imminent death or injury to the operator or others. We therefore discern no impropriety with the stop.

Defendant also argues the State's failure to preserve and produce the 9-1-1 recording warranted dismissal of the charges. Under the facts presented, we disagree.

In our review of a trial court's resolution of a discovery issue, we afford the court substantial deference and will not overturn its decision "absent an abuse of discretion[,]" State v. Stein, 225 N.J. 582, 593 (2016), meaning that the decision is "well 'wide of the mark,' or 'based on a mistaken understanding of the applicable law[.]'" State v. Hernandez, 225 N.J. 451, 461 (2016) (citations omitted). But, "[o]ur review of the meaning or scope of a court rule is de novo; we [will] not defer to the interpretations of the trial court . . .

unless we are persuaded by [the trial court's] reasoning." State v. Tier, 228 N.J. 555, 561 (2017) (citing Hernandez, 225 N.J. at 461).

Defendant contends he was prejudiced by the State's failure to preserve the 9-1-1 recording, but he does not expressly articulate how he was prejudiced by that failure. Although defendant notes the State never offered "any justification for the failure to provide the recording," he does not claim the State acted in bad faith. In fact, he concedes the State's failure to preserve/produce the 9-1-1 recording was "not deliberate." Relying on our Supreme Court's decision in Stein, he argues the discovery violation requires dismissal of the charges. We disagree.

In Stein, the defendant in a DWI municipal court prosecution requested in discovery video recordings that "may have recorded his appearance, behavior, and motor skills at the accident scene and police headquarters." 255 N.J. at 586. The municipal prosecutor claimed the recordings did not exist, but before the Law Division, the prosecutor switched gears, contending the State was under no obligation to produce the recordings. Id. at 586, 600. The Court found the recordings, "if available" were "clearly relevant to a DWI defense." Id. at 586. But, because the record did not reflect whether the recordings "ever existed or existed at the time of defendant's discovery request," the Court

remanded the matter to the Law Division "out of an abundance of caution" to conduct a hearing addressing that issue. Id. at 586-87, 601. In doing so, the Court recognized "the Law Division has wide latitude to fashion an appropriate remedy pursuant to Rule 7:7-7(j)." Id. at 601. That Rule empowers the court to order production of the "materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed or enter such other order as it deems appropriate." Here, by contrast, it is undisputed that the 9-1-1 recording no longer exists.

Our courts have considered the destruction of evidence in the context of whether a defendant's due process rights are violated. See State v. Hollander, 201 N.J. Super. 453, 479 (App. Div. 1985). If potentially useful evidence has been destroyed, the court must assess three factors: "(1) whether there was bad faith or connivance on the part of the government; (2) whether the evidence . . . destroyed was sufficiently material to the defense; [and] (3) whether [the] defendant was prejudiced by the loss or destruction of the evidence." Ibid. (citations omitted).

In a footnote of his merits brief defendant claims <u>Hollander</u> applies to a <u>Brady</u>[1] violation; not to the discovery rule violation he has asserted in this case. He argues <u>Hollander</u>'s second prong must be considered under the test espoused by the Court in <u>Stein</u>. But, defendant also acknowledges the remaining <u>Hollander</u> factors "are certainly relevant in deciding whether there [was] a discovery violation." In essence, his argument is focused more on the State's discovery violation than how the 9-1-1 recording was material to his defense. <u>See</u> <u>Hollander</u>, 201 N.J. Super. at 479.

We conclude even if the caller had been identified and testified at the hearing to further describe his or her observations, the effect of the call on Campanella together with his observation of defendant's vehicle in motion in the area described by the caller, provided sufficient information to stop the vehicle. In reaching our conclusion, we reject defendant's claim that the caller's information was "multiple[-]level hearsay." <u>See</u> N.J.R.E. 803(c)(1) (excepting from the hearsay rule statements based on present sense impressions).

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

Affirmed.

---

[1] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

A-4928-18T3